## DANIEL v. BIRMINGHAM DENTAL MFG. CO. (6 Div. 543.)

(Supreme Court of Alabama. June 22, 1922.)

**I. Adjoining landowners ⊚⟺10(3)—To secure injunction against a spite fence, allegations must charge uselessness and malice.**

To establish a spite fence as a nuisance, which may be abated by injunction, it is necessary to specifically allege that the fence complained of is entirely useless and constructed with malice.

**2. Adjoining landowners ⊚⟺10(3)—Bill alleging spite fence held to contain equity.**

A bill alleging the construction of a spite fence 10 feet high in close proximity to complainant's building, of no use to the respondent and with the malicious intent to annoy and hinder the complainant, held to contain equity.

**3. Appeal and error ⊚⟺863—On appeal, rulings on temporary injunction are considered as findings of fact on all the pleadings.**

An appeal from an order continuing a temporary injunction must be considered as a finding of fact on all the pleadings, in view of Code 1907, § 4535, making it proper to consider, in making such an order, not only the answer, but all the pleadings and affidavits before the court.

**4. Adjoining landowners ⊚⟺10(3)—Erection of alleged spite fence not enjoined.**

Erection of a fence to exclude obnoxious odors and disturbing noises from automobile carburetor plant will not be enjoined, though its construction may be tainted with a spirit of retaliation.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Birmingham Dental Manufacturing Company against E. Daniel for injunction. From a decree overruling motion to dissolve temporary injunction, respondent appeals. Reversed, rendered, and remanded.

The bill of complaint is filed for the prevention of an alleged nuisance by a writ of injunction.

The original bill averred: That the appellee, complainant, was the owner and in possession of a certain lot in the city of Birmingham, and had located thereon a building where it was, and had been engaged for a long time in the manufacture of dental instruments, and that it was prepared to engage in addition thereto, in the manufacture of carburetors for automobiles, and that it had erected on its said lot a one-story building, properly arranged for the admission of light into said building and that light was necessary for the carrying on of its said business. That the respondent was the owner of the adjoining lot and that he was engaged, or about to be engaged, in erecting or about to erect a high fence, which would interfere with the light coming into complainant's plant, and if he was permitted to erect same it would cause irreparable injury to complainant's said business. That the wall of complainant's building adjacent to respondent's lot was modern and did not in any wise interefere with respondent's health or the enjoyment of his property.

The equity of the bill is found in the third paragraph, which, as amended, is as follows:

"3. Complainant further represents that the said wall of complainant's said building adjacent to the said lots of respondent is modern and arranged with a number of windows which admit air and light into the said offices and building of complainant; that the said fence which the respondent is in the act of erecting is a solid board fence about 10 or 11 feet high and about 6 inches from the dividing line of the lots between complainant and respondent, and does not serve any useful purpose to respondent, nor add any value to the property of respondent; that it will be useless and also unsafe in that it is dangerous to the adjoining property of complainant by its liability to fall or be thrown over against complainant's said property, and thus cause damage thereto; and will also cut air and light from complainant's place of business at said place. Complainant further represents that, upon information and belief, and upon said information and belief avers that respondent is erecting the said fence for the purpose of vexing, annoying and injuring complainant from using air and light so necessary in the carrying on of its said business, or for the purpose of influencing complainant in securing a purchaser for his said lot, or for forcing complainant to purchase same."

Respondent demurred to the bill for want of equity.

The sworn answer, which was also made a cross-bill, praying for preventive relief against the alleged nuisance of complainant's business, after describing the character of the locality, and the acquisition and previous uses of the respective lots here concerned, proceeds with allegations as follows:

That after respondent purchased said lot and erected and occupied said dwelling house and about the 1st of March, 1921, the complainant, its agents, servants, lessees, or licensees commenced to carry on a business of what respondent was informed was testing carburetors

for automobiles on the said lot of complainant; that such testing of carburetors was made by running the engines of automobiles at a very rapid rate of speed and was accompanied by very large noises or explosions and vile and obnoxious odors which caused great annoyance, discomfort, injury, and inconvenience to respondent and the other members of his family in the use and occupancy of their said home· on respondent's said lot, and that such testing of carburetors continued at very frequent intervals for several weeks; that about the 15th of May, 1921, complainant commenced the erection of an addition to its original building on said lot and when the bill in this case was filed had almost entirely completed a one-story addition to said building, which was so constructed that it occupied complainant's entire lot and the east wall of which was built on a line dividing complainant's property from that of respondent and extended back along said line a distance of 168 feet to an alley; that said wall is from 12 to 20 feet from the western wall of respondent's dwelling house; that the south part of said addition for about 40 or 50 feet appears to be an office being fitted up with furniture and fixtures usually used in the office of a business concern, and that there are a number of people constantly in said office building during the entire day, and that there will be a large number of people employed in said office portion, and constantly a large number of other people going to and from said building at all times; that the office portion of said building has six large glass windows, which front on respondent's lot, three of which look directly into the windows of respondent's house and the others look on the front porch and yard of respondent's house, thereby completely destroys the privacy and comfort of respondent's said house and lot as a home for himself and family; that adjoining said office portion of said addition and extending northward so as to cover the remaining portion of said lot, complainant's addition to its original building is built in the manner of a large manufacturing plant and that the same is equipped with machinery and appliances, and that complainant intends to carry on both in its original building and in addition thereto the business of manufacturing, assembling, and testing carburetors for automobiles on a large scale; that on the eastern side of said addition and fronting the said lot and dwelling house of respondent a distance about 128 feet to the wall of said addition, is not solid, but is constructed in the manner of a manufacturing plant and gives the appearance of the intention to place glass windows therein, which windows from the frames and other indications will be about 14 feet high; that respondent did not know whether it was complainant's intention to put in ordinary glass windows or heavy glass woven with wire, such as is usual in manufacturing plants, but that if ordinary window glass is placed for the same will look over in respondent's entire dwelling house and will completely destroy the privacy and convenience of respondent's house and lot as a place of residence for himself and family, that if translucent glass be placed therein, the same will admit very little light into complainant's said building; that complainant's purpose is to employ a large number of men as employees in and connected with its business on its said lot, and that such business will be accompanied by great noises, vibrations, vile and obnoxious odors, discomfort and inconveniences to respondent and his family in the use and occupancy of his said lot as a home, regardless of the kind of glass to be placed in the eastern wall of said addition; and that thereby respondent's said lot and dwelling house will be greatly injured and damaged, and that the reasonable market value thereof will be and is reduced to great extent, to wit, the sum of $2,000, and that the health, comfort, and convenience of respondent and the members of his family will be greatly impaired and affected, and that great and irreparable injury has been and will continue to be suffered by respondent on account of the building of said addition to complainant's building, and the operation therein of a manufacturing plant; that respondent has five children who live with him in his said residence, and that his wife is in a very delicate condition of health, and that she has been made very nervous and apprehensive by reason of the addition to complainant's building and the prospect of the operation of a manufacturing and testing plant for carburetors with the large number of people, noise, dust, vibration, and offensive odors, necessarily incident to such manufacturing business; and that on account of the health of respondent's wife and for the purpose of minimizing his injury and damage and for the purpose of securing privacy to his family in the use and occupation of their home, and especially while respondent's wife was in such state of health and in order to reduce as far as possible the discomfort and inconvenience and annoyance to him from the use of said building as a large manufacturing plant and testing place for carburetors and office, the respondent had commenced the erection of a fence on his own property, but had not completed the same when the writ of injunction was served on him; that it was and is the intention of respondent to erect a fence not higher than 10 feet and which would extend from the south of Second avenue line of respondent's lot a distance of about 86 feet along and near the western line of his property to the rear end of his dwelling house and that for this purpose, when the writ of injunction was served on him, he had placed posts in the ground, which posts were about 10 feet high and he positively denied any purpose or intention of extending such fence further than the northern or rear end of his dwelling house. It is emphatically denied by respondent that the fence which he proposed and had commenced to erect on his property was to be erected maliciously or out of spite toward complainant or for the purpose of harassing or interfering with the complainant in its business, but that on the contrary said fence was proposed and intended to be erected for the bona fide purpose of improving his property and for the purpose of minimizing his loss and damage from the use of which complainant had so put its property for a manufacturing plant and place for testing carburetors; that the erection of said fence will insure respondent greater privacy in the use and occupation of his said home, and that such fence will, to a large extent, minimize and lessen the discomfort, from the operation of said manufacturing plant on complainant's said property.

"By amendment to the answer and cross-bill, it is further averred that the posts for said fence are good sound new lumber, such posts at the end of the fence being set in the ground about 4½ feet or 5 feet deep and extending in height about 9½ feet, and that the intermediate posts are implanted about 3½ feet in the ground and are about 9½ feet high, and that, although the railings for said fence had been attached to said posts, it was and is the purpose and intention of respondent to construct said fence in a strong workmanlike manner, in such a way as there would be no danger of the same falling down and that said fence would be neat in its appearance; it was further denied that said fence was proposed to be erected for the purpose of vexing, harassing, or injuring complainant or for the purpose of influencing complainant to buy or find a purchaser for respondent's property."

After such amendment the respondent refiled his motion to dissolve the injunction for want of equity in the bill and on the coming in of answer.

On the hearing of the motion a number of affidavits were introduced and submitted by both parties, and, concluding on the pleadings and evidence "that there is a likelihood at least of the establishment of the allegations of the bill, the trial court decreed that the temporary injunction should be continued until final hearing, and overruled the motion to dissolve.

Rudulph & Smith, of Birmingham, for appellant.

In bills for injunction, all matters essential to complainant's right to relief must be shown with accuracy and clearness. 130 Ala. 584, 30 South. 568; 75 Ala. 368. Jurisdiction of equity to restrain nuisances will be exercised only when there is a strong case of pressing necessity. 75 Ala. 510, 51 Am. Rep. 463; 95 Ala. 259, 10 South. 134; 138 Ala. 597, 36 South. 178, 100 Am. St. Rep. 53; 172 Ala. 182, 55 South. 793. The motion to dissolve the temporary injunction should have been granted. 137 Ala. 657, 35 South. 30, 97 Am. St. Rep. 69; 104 Ala. 130, 16 South. 131; 176 Ala. 381, 58 South. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714; 106 Ala. 546, 17 South. 706. Respondent had the right to erect the fence for the purpose of excluding noises, vapors, and fumes from complainant's plant. 95 Ala. 267, 10 South. 134; 123 Ala. 292, 26 South. 294; 148 Ala. 490, 42 South. 749; 147 Ala. 384, 41 South. 907, 8 L. R. A. (N. S.) 226, 119 Am. St. Rep. 89, 11 Ann. Cas. 285; 182 Ala. 335, 62 South. 677, 46 L. R. A. (N. S.) 642, Ann. Cas. 1915D, 776; 188 Ala. 658, 65 South. 967; 106 Mich. 649, 64 N. W. 569, 58 Am. St. Rep. 511; 106 Va. 171, 55 S. E. 546, 7 L. R. A. (N. S.) 349, 117 Am. St. Rep. 997, 10 Ann. Cas. 66; 4 Ann. Cas. 373; 176 Ala. 381, 58 South. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714; 107 Mich. 444, 65 N. W. 275, 61 Am. St. Rep. 344.

Andress & Coffman, of Birmingham, for appellee.

Motion to dissolve the temporary injunction was properly overruled. Code 1907, § 4535; 191 Ala. 310, 68 South. 149. The bill had equity, and injunction properly issued. 176 Ala. 381, 58 South. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714.

SOMERVILLE, J. [1, 2] In Norton v. Randolph, 176 Ala. 381, 58 South. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714, we held that a "spite fence," as there defined, is a nuisance which may be abated by injunction from a court of equity.

To bring a case within the principle there announced, we said that—

"it should be distinctly alleged, not only that the structure complained of is entirely useless to the respondent, and without value to his property, but also that it was maliciously erected for the purpose of injuring complainant in the use and enjoyment of his property."

In Norton v. Randolph, supra, the structure complained of was erected by the respondent on a vacant and unused lot, and on the face of the pleadings, upon which alone the case was considered, there was no foundation for any inference of utility or advantage, real or fancied, to the respondent.

So far as the bill of complaint here exhibited is concerned, we think it very clearly contains equity in two distinct aspects: (1) (Within the requirements stated in Norton v. Randolph) as a bill to abate or prevent a malicious structure which is injurious to the complainant, and of no advantage or value to the respondent; and (2) as a bill to abate or prevent a dangerous nuisance. Whether or not, in either aspect, it is subject to any special ground of demurrer, is a question not now before us.

[3, 4] The old rule that a temporary injunction would be dissolved almost as a matter of course upon the sworn denials of the answer, if full and specific, has been changed by section 4535 of the Code, and—

"conclusions for or against dissolution of injunctions will and must under the statute be treated here on review as any other finding of fact * * * upon a defined issue." Nelson v. Hammonds, 173 Ala. 14, 55 South. 301; Franklin v. Long, 191 Ala. 310, 68 South. 149.

Therefore, although the motion to dissolve the writ, as for want of equity in the bill, was properly overruled, it must nevertheless be considered on the issues of fact presented by the sworn denials of the answer and the affidavits pro et con, viz.: (1) Whether the fence, as planned, would in fact serve any useful purpose for respondent and his family in the legitimate use and enjoyment of their home premises, or whether respondent in good faith believed it would

so serve, and resorted to it for that purpose and not merely to injure complainant; and (2) whether, when completed in the manner shown, it would be so likely to fall against complainant's building, and injure it or its occupants, as to endanger their safety.

On the first proposition, we are more than reasonably convinced that the structure planned will be of some service to respondent in deadening the noises incident to the operation of complainant's plant on the lot adjoining, and that it will be of substantial service in securing the privacy of his premises against the close-up view of the numerous persons who will be employed in the adjoining building, or who will resort there in the course of its business operations. This being true, the court will not undertake to measure the quantum of the benefit that may result, and will decline to interfere, even though respondent's action is not unmixed with a spirit of retaliation and a purpose to injure complainant. In such a case, though damage may result, there is no legal wrong.

As to the second proposition, we are convinced that the structure which respondent shows he intends to build will not menace the safety of complainant's building or the security of those who may occupy it, at least not for a long time to come. If, after its erection it should appear to be, or should become. a dangerous nuisance, it will then be time enough to invoke the injunctive aid of equity. McHan v. McMurry, 173 Ala. 182, 55 South. 793.

On the record before us we think that the trial court erred in overruling the motion to dissolve an answer and proof, and a decree will be here rendered granting the motion and dissolving the temporary writ of injunction.

Reversed, rendered, and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.