(129 So. 279)

## CRUCE v. McCOMBS.

### 6 Div. 464.

Supreme Court of Alabama.

June 26, 1930.

Arlie Barber, of Birmingham, for appellant.

Erle Pettus, of Birmingham, for appellee.

THOMAS, J.

The assignment of error challenges the action of the trial court in overruling respondent's motion to dissolve the temporary injunction.

 Complainant, McCombs, purchased certain properties, the Jones Valley Drug Company, from defendant, Cruce, for $5,000 of which $3,100 was paid upon signing the contract, "and the assumption by the grantee of

$1,565.00 indebtedness against the fixtures and stock," and complainant later paid $335 to defendant; that, as a part of this recited consideration of $3,100, complainant transferred to defendant vendor a lease sale contract for $2,500 between the McCombs and the Saegers. This contract was executed when Saeger and wife purchased certain real estate upon which there was an unpaid balance due of $1,400 and interest. Complainant executed to defendant a deed to the real property embraced by the "lease sale contract" from the Saegers to the McCombs, having theretofore surrendered to said grantee said contract and unpaid notes thereon.

It is thereupon averred:

"That at the request of said Defendant your Orator endorsed said notes, but did not endorse the same without recourse, it being understood and agreed at the time that the said Defendant would look to the property and accept the conveyance of the same by your Orator in full satisfaction and payment of the amount represented by the unpaid balance on said Lease Sale Contract.

"That thereafter, upon default being made in the payment of said notes by the makers thereof, the said defendant took possession of the property described in said Lease Sale Contract, and reclaimed the same, and forfeited any rights that the said C. E. Saeger may have had in or to the said property."

It is further averred that the said defendant had procured a judgment against complainant "upon certain of said notes" for $766.50, and filed suit for $175 on other of said notes, and threatens to sue complainant upon his "endorsement upon the remainder of said notes as (they) fall due, which will cause a multiplicity of suits at excessive cost and expense."

It is then averred: "That in Equity and good conscience, your Orator has fully paid and satisfied the claims of the said Defendant by transferring and assigning to him the Lease Sale contract, and by quitclaiming to him the land therein described; and that in signing his name upon the back of said note, which was not his intention to endorse or guarantee the same, but the same was done subsequent to the original transaction, and without consideration, and merely for the purpose of evidencing the fact that said notes had been assigned, together with the Lease Sale Contract to the said Defendant, it being the intention of the parties at the time that the transfer and assignment of the property described in the Lease Sale Contract should be in full discharge and acquittance of the amount represented by the said unpaid balance on said Lease Sale Contract in so far as same was owed by your Orator to the Defendant."

Complainant offers to pay said notes if the property (for which they were given as consideration and as purchase price) in question is reconveyed to complainant; "that the said Defendant is not entitled in equity and good conscience to hold the said property and to force your Orator to pay him a second time for the amount involved on said Lease Sale Contract; that said Defendant has refused to convey back the property, but insists on holding the property, and in the Law Court, upon forcing your Orator to make second payment for the amount so involved and represented by the unpaid balance on said Lease Sale Contract."

Complainant further "offers to pay all of said notes which remain unpaid, with interest thereon," upon such reconveyance of the property the subject of the McCombs and Saeger contract and conveyance.

The affidavit of Saeger was to the effect that—

"The property was bought on Lease Sale Contract, and the Lease Sale Contract on this property was to be transferred to Mr. Cruce, together with the notes.

"Mr. Cruce notified me that he had taken over the Lease Sale Contract and I was to pay him, and not Mr. McCombs; that he had negotiated with Mr. McCombs, and had agreed that he would collect the unpaid balance on this Lease Sale Contract, and not look to Mr. McCombs for the unpaid balance on this Lease Sale Contract. Mr. Cruce told me in the event payment could not be made by me, he would take the house, and not look to Mr. McCombs for the payment of this unpaid balance. Mr. Cruce also stated to Mr. McCombs that he would not look to any personal property if default should be made in payment of these notes on said Lease Sale Contract, but would take the house back, in payment of the same.

"Some time after the trade between Mr. McCombs and Mr. Cruce of the Jones Valley Drug Company, which included the transfer of my place by Lease Sale Contract, I notified Mr. Cruce that I was unable to make further payment on these notes, and would be compelled to sell the same. He agreed for me to sell the same, and he would try and help me sell this property. Mr. Cruce also told me he didn't want me to lose any money on the property; that I should just go ahead and sell the same. Later I found two or three purchasers, and in trying to consummate a sale, I would send them to Mr. Cruce, and he stated to them that I had no interest in the property, and he was the owner.

"Mr. Cruce later filed suit on the part of the unpaid balance on these notes in the Circuit Court of Jefferson County, Alabama, which suit terminated in a judgment against C. E. Saeger. Mr. Cruce had taken over the property before securing judgment.

"This closed the transaction between Mr. Cruce and myself until I heard of suit being

filed by Mr. Cruce against Mr. McCombs for the same unpaid balance on these notes upon which he filed suit against me.

"Mr. Cruce definitely stated to me he would not look to Mr. McCombs for the payment of these notes on this Lease Sale Contract; but in the event payment could not be made, he would look to the property in payment of same."

And Hollifield's affidavit was to the effect:

That he was a clerk in said drug store; heard the discussion of the purchase thereof, and that it was agreed by the parties that "the Jones Valley Drug Company would be sold by S. A. Cruce to N. C. McCombs for a consideration of Five Thousand ($5,000.00) Dollars, and that the said amount would be paid by the said McCombs assuming an indebtedness amounting to One Thousand Five Hundred Sixty-Five ($1,565.00) Dollars against the fixtures and stock, and the payment of an additional sum of Three Hundred Thirty-Five ($335.00) Dollars to the Defendant which was later paid, and the payment of Thirty-one Hundred or Thirty-two Hundred Dollars was to be paid as follows: By the transfer of Lease Sale Contract from Hawkins to McCombs, and another Lease Sale Contract of about Twenty-Five Hundred ($2,500.00) Dollars from Saeger to McCombs, on which latter there was an unpaid balance of Fourteen Hundred ($1,400.00) Dollars. * * *

"At the time of the closing of the trade Mr. McCombs turned over to Mr. Cruce these Lease Sale Contracts, together with the notes signed by Saeger.

"Two or three days later, Mr. Cruce came back to Mr. McCombs, and asked him for a Deed to the property described in Lease Sale Contracts. Mrs. McCombs was called to the store, and Mr. McCombs, and his wife, executed the deeds to the property, and Mr. Cruce didn't ask him to sign or endorse any of the notes going with the Lease Sale Contracts. All he said was that he wanted the Deeds, and that would wind up the matter, as he wanted the Deeds to the property upon which there were Lease Sale Contracts. Mr. McCombs said at the time that he gave him the Deeds that both Hawkins and Saeger had been paying well on the Lease Sale Contracts, and had paid the same down considerably, and he didn't want either one of them pushed on their payments, and Mr. Cruce said in substance that he was satisfied with the security, and he would not push them. Mr. Cruce said that he was satisfied with the security and the equity he had in the property, and would not push either Hawkins or Saeger on their notes. Mr. Cruce took the deeds and left, and nothing more occurred about the trade.

"The store had been turned over to Mr. McCombs at that time and the entire matter was closed up. * * *

"Several months after this when Saeger failed to pay some of the notes, I was standing near the 'phone when Mr. McCombs answered a call from Mr. Cruce. I heard Mr. McCombs call Mr. Cruce's name in talking to him over the 'phone, and heard Mr. McCombs tell Mr. Cruce 'No he would not pay the notes for Saeger'—saying, 'You know that was not the agreement and I am not liable.' He then said 'Well, if you have to have your money from somebody, I will take up the Saeger Contract and finish paying it out if you will deed me back the land.' Mr. McCombs then said to Mr. Cruce: 'You certainly don't want to keep the land and get the money too.' "

The affidavits of the McCombs were of like import.

The affidavit of Mr. Gibson was to the effect that he advised the defendant, Cruce, in the transaction for sale of the drug store; stated that, as Dr. Cruce was liable for purchase of the fixtures in the drug store, which debt McCombs assumed, and also on account of any damages that might be done to the property by the lease sale contract purchasers, or by the arrears in payment of rent, if such there were, "that it was only just and fair that McCombs should unqualifiedly endorse the notes"; that "there was some discussion as to whether they should be endorsed 'without recourse,' but Dr. Cruce would not agree to that, so they were endorsed by McCombs without qualification and at the same time the contract and deeds were executed and delivered."

In view of the nature of these contracts and properties dealt with by the parties, this conflict in the evidence as to the true consideration of purchase, as the notes in question entered therein—whether the notes were indorsed generally at the time of the purchase of the drug store, as indicated in answer and defendants' affidavits and pleading, or thereafter as indicated in complainant's pleading and affidavits—the status quo should be protected by injunction to final hearing. Stout v. Thomas, post, p. 675, 130 So. 189.

The statute is (section 8311, Code): "Upon the hearing of motion to dissolve an injunction, the court may consider the sworn bill and answer, whether the answer contains denials of the allegations of the bill or independent defensive matter, and also such affidavits as any party may introduce."

Under this statute the trial court exercises a large discretionary power as to the dissolution of injunctions (Brown v. Bell, 206 Ala. 182, 89 So. 659; Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181, 66 So. 50; Mobile & Western Railway Co. v. Fowl River Lumber Co., 152 Ala. 320, 44 So. 471), and, notwithstanding complete denials in an answer, may protect by injunction until final hearing. When considered here on motion to dissolve,

'sworn denials of the answer, and the affidavits pro and con (Daniel v. Birmingham Dental Mfg. Co., 207 Ala. 659, 661, 93 So. 652; Toney v. Burgess, 208 Ala. 55, 93 So. 850), we find no reversible error in declining to dissolve the temporary injunction.

Affirmed.

ANDERSON, C. J., and· SAYRE and BROWN, JJ., concur.