167 So. 566

## DEAN v. COOSA COUNTY LUMBER CO. et al.

### 5 Div. 219.

Supreme Court of Alabama.

April 16, 1936.

Basil A. Wood, of Birmingham, for appellant.

H. A. Teel, of Rockford, and Holley & Milner, of Wetumpka, for appellees.

KNIGHT, Justice.

The bill in this cause was filed by W. R. Dean, as administrator of the estate of C. T. Singleton, against the Coosa County Lumber Company and others, seeking relief against a forfeiture, discovery, and an accounting, for temporary and permanent injunction, and for general relief.

The bill was presented to Hon. W. W. Wallace, judge of the circuit court of Coosa county, Ala., for temporary injunction. However, Judge Wallace made an order, setting the application for hearing at Rockford, Ala., on March 24, 1936. Notice as required by the order of the judge was given the defendants, and, upon the hearing, the judge refused the writ of injunction, as prayed for, and from this order the present appeal is prosecuted by the complainant.

The application for injunction was heard upon the sworn bill as amended. No answer or demurrer was interposed by the defendants, and no evidence, either by way of affidavits or oral testimony, was offered by either party.

It appears from the averments of the bill that the Coosa Lumber Company and the said C. T. Singleton, deceased, on April 21, 1934, entered into a contract for the sale and purchase of all merchantable timber, as defined in said contract, upon the lands described in said agreement. The purchaser, the said C. T. Singleton, agreed to pay the said Coosa Lumber Company in cash for the timber, as the same was released to him, at the rate of $8.50 per thousand feet stumpage. The amount of stumpage sold and purchased had been ascertained and agreed upon at the time of the execution of the contract, and the agreement sets forth in an exhibit thereto the amount of stumpage on each governmental subdivision of said land.

At the time of the execution of the contract the said Singleton agreed to pay, and did pay, the said Coosa Lumber Company for 236,000 feet of said timber, at the rate of $8.50 per thousand feet, or the sum of $2,006. This purchase included the timber on the following described lands, viz.: Northeast quarter of southwest quarter and northwest of southwest quarter, section 8, township 22, range 19,

Coosa county, Ala. The timber on this land was to be released by the Coosa Lumber Company to the said purchaser.

The contract, in paragraph 4, contained this further provision: "Furthermore, the purchaser agrees that at all times during the life of this contract, to purchase and pay for same in cash, 236,000 feet or more of timber in advance of the cutting or removing of said timber upon the delivery by the grantor of the proper releases from the Alabama Lumber Investment Company and the grantor; and the timber so purchased in advance being in the nature of an advance cash payment hereunder and to continue to purchase the timber in such manner until all the timber embraced herein has been paid for, provided, however, if any of the terms and conditions of this contract have not been fully performed and carried out by the purchasers and they should fail to purchase the timber in advance of the cutting and removing as stipulated herein, then and in that event the timber therefore purchased and uncut shall go to the grantor as liquidated damages for failing so to do. The performance on the part of the *purchaser herein contemplated being a substantial compliance* with the terms and conditions of the contract."

Paragraphs 5, 6, and 8 of the contract read:

"5. That the remainder of the timber so purchased shall be released to the purchaser from time to time as requested upon payment by the purchaser therefor at said stipulated price, it being agreed that release shall be in forty acre tracts or multiples thereof.

"6. That during the continuance of this contract, the grantor shall upon request by the purchaser and on payment therefor at said stipulated price, release to said purchaser the timber so purchased upon said forties of said timbered land as the purchaser shall designate such releases to be evidenced by proper instrument in writing conveying the title to such timber to the purchaser."

"8. The purchaser shall have two years from the date of this contract within which to cut and remove the timber here contracted to be purchased subject to the provisions hereinbefore contained in this paragraph."

Thereafter, on December 18, 1935, the said seller and purchaser entered into an agreement, extending the period within which the said Singleton should be allowed to cut and remove said timber, and making further provisions with reference to the cutting and paying for said timber. Paragraphs 1, 2, 5, and 6 of the new agreement appear in the report of the case.

The said C. T. Singleton, on December 18, 1935, the date of the execution of the extension agreement, paid the Coosa Lumber Company $952, being payment for 112,000 feet of stumpage, which was an excess of 12,000 feet over the amount required to be paid for by the terms of the new or extended contract, and for this excess the purchaser was to be given credit on the amount of stumpage he was required to purchase and pay for during the succeeding month of January, 1936.

It appears that the said C. T. Singleton died on January 23, 1936, without having made any other payment on the timber contract. At the time of his death he was in default as to the advance payment for 88,000 feet of stumpage, and we may concede that he had been in default as to that payment since January 18, 1936; that is to say, for five days prior to his death. However, at that time, and continuously since the execution of the original contract on April 21, 1934, the Coosa Lumber Company held in its possession $2,006 of Singleton's money, paid to it as advance payment on timber.

It further appears from the averments of the bill as amended that on the 7th day of February, 1936, just fifteen days after the death of said Singleton, the said Hamrick, Pearson, and Little, who claimed to have succeeded, on the dissolution of the corporation of Coosa Lumber Company, to "the title to the contracts and title to the property described in the bill of complaint, in their individual capacities," proclaimed that the said Singleton was in default under said contracts in the payment for 188,000 feet of timber stumpage, and *declared all the interest and all of the payment theretofore made by Singleton, and all timber theretofore paid for by the said lessee (Singleton) and removed from the properties released as aforesaid, were forfeited to said lessor by reason of such failure.* (Italics supplied.) And the bill further avers that "said lessor, its servants or agents while acting within the line and scope of their employment, ordered and directed the sublessees of said decedent (Singleton), who were at said time actively engaged in the

cutting and removal of the timber from the properties so released, to stop any and all cutting and removal of said timber from the properties so released and not to trespass upon said premises, and that said lessors had taken possession of all properties leased to said decedent as described in the exhibits hereto attached."

It further appears from the amended bill that the said lessors and transferees (Hamrick, Pearson, and Little) had taken possession of the lands theretofore released to, and paid for by, said Singleton; and had cut and removed therefrom a large amount of the timber, the exact amount thereof being unknown to complainant, but which is fully known to the lessors, and to said Tatum and Daniels, who did the cutting. .

It thus appears from the bill as amended that the said Coosa Lumber Company and their successors in title and interest have not only declared the contracts which the said Singleton had with the Coosa Lumber Company terminated, but have declared forfeited to it and its successors $2,006 paid to it as an advance cash payment on timber, and have also declared forfeited the interest of the decedent's estate in the timber actually purchased and paid for by the decedent in his lifetime. Acting upon their assumed right to so declare such a forfeiture, they have proceeded to cut and remove timber theretofore paid for by said Singleton in his lifetime.

It further appears from the bill that from April 21, 1934, to and including December 18, 1935, the said Singleton paid in cash to the Coosa Lumber Company, under the terms of said contract, the aggregate sum of $7,150, for which the company had released to Singleton the timber on several tracts of land, and upon which it is averred the company had, upon declaring the contract terminated and the rights of said Singleton forfeited, re-entered and had proceeded to cut and remove the timber therefrom. This re-entry included all lands except the northwest quarter of the northwest quarter of section 17, township 22, range 19, in Coosa county. It would seem from the averments of the bill that neither the Coosa Lumber Company or its successors have molested the said Singleton or his representative in cutting timber from this particular tract.

C. T. Singleton died on January 23, 1936, and the complainant was duly appointed administrator of his estate on the 11th day of February, 1936. The bill was filed within a few days thereafter.

The bill is sworn to, and no denial of its averments was made on the hearing of the application for the temporary injunction. We are therefore authorized and justified in assuming that the facts averred and well pleaded are true.

As heretofore pointed out, the case is before us on appeal from the order or decree of the court refusing to grant an injunction, after hearing. Upon the hearing the court had before it only the sworn bill as amended and the exhibits thereto.

We have held that, when a hearing is had on motion for a temporary injunction, as authorized by section 8304 of the Code, the status of the case resembles in many respects a hearing on a motion to dissolve an injunction which was granted without a hearing. In determining whether such an injunction will be granted, the court will weigh the respective consequences to the parties and exercise a power which is largely discretionary, when the bill shows a right to relief. Cruce v. McCombs, 221 Ala. 507, 129 So. 279; Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181, 66 So. 50; State v. Mobile & Ohio R. R. Co., 228 Ala. 533, 154 So. 91.

Of course, if the bill shows no right to relief, the injunction will be denied. Nor can the court aid the allegations of the bill by construction. The bill must be determined, as to its equity, "upon the averments contained in it, unaided by construction and unamplified by assumed amendment." The complainant is the actor, and he must present a case entitling him to injunctive relief, or it will be denied. He can be aided by "no rule of favor, like that of assumed amendment, to his initial pleading." McHan v. McMurry, 173 Ala. 182, 55 So. 793; Seals v. Robinson, 75 Ala. 363; Blackburn v. Fitzgerald, 130 Ala. 584, 30 So. 568; Bishop v. Huff, 81 Neb. 729, 116 N.W. 665.

So, then, has the complainant stated a case which called for or justified injunctive relief? If the action of the Coosa Lumber Company or its successors in title and interest, in declaring the forfeiture, and in re-entering the premises, upon which the timber thereon had been sold and released to complainant's intestate,

and in cutting and removing the timber therefrom, was wrongful, or unjust, or inequitable, and therefore subject to be set aside in a court of equity, the bill makes a case for injunctive relief, and the court below erred in refusing to grant the injunction prayed for.

Let it be understood that at the time the Coosa Lumber Company, or its successors in title and interest, undertook to declare and enforce the forfeiture, the said Singleton was dead, having died on the 23d day of January, 1936, and the forfeiture of all his rights and property interest under the contract was attempted to be declared and enforced by the Coosa Lumber Company, or its successors, on the 7th day of February, 1936, for the nonpayment of $748, being the agreed price of 88,000 feet of stumpage, which, by the terms of the contract, should have been paid for on January 18, 1936, or within a reasonable time thereafter. Let it also be understood that, at the very time when the forfeiture was attempted to be declared, the Coosa Lumber Company, or its successors, had in their possession $2,006 of the said C. T. Singleton, deceased, paid to the said Coosa Lumber Company as advance payment for timber. The fact must not be overlooked, also, that at the time the forfeiture was attempted to be declared there was no one in existence to protect or even to speak for the said Singleton; he having died just a few days before the forfeiture was attempted to be declared.

■ Under such circumstances, will a court of equity, which regards with great disfavor forfeitures, sanction the action of the parties in asserting the forfeiture in the case, and deny relief therefrom to the complainant?. Unquestionably, under the contract, when the complainant's intestate made the payments to the Coosa Lumber Company for the timber, and the same was released to him by said company, the buyer acquired, not simply a contract right, but a property right in the timber. Barton v. W. O. Broyles Stove & Furniture Co., 212 Ala. 658, 103 So. 854. This right and the property interest the said Coosa Lumber Company, or its successors, have attempted to take from the estate of said Singleton, relying for the right to do so upon the forfeiture provision of the contract.

■ In the case of Root v. Johnson, 99 Ala. 90, 10 So. 293, it was said: "Forfeitures are not favorites in equity, and, unless the penalty is *fairly proportionate* to the damage suffered by the breach, relief will be granted when the court can give by way of compensation all that could be reasonably expected."

In 1 Pomp.Eq.Jur. § 450, the author states the following as a sound rule in such cases: "It is well settled that when the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner *made necessary by the circumstances of the case,* on payment of the debt, interest and costs, if any have accrued, unless by his inequitable conduct he has disbarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity." This rule was quoted with approval by this court in the case of Franklin v. Long, 191 Ala. 310, 68 So. 149.

■ And it may be stated, as a general rule of equity jurisdiction, that the hard and harsh remedy of forfeiture yields to compensation when *fair dealing* and *good conscience* require it.

In the case of Hunter-Benn & Co. v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348, 349, it was observed: "The jurisdiction to relieve against forfeitures is founded upon the principle that a party having legal rights shall not be permitted to use them oppressively to the injustice of the defaulting party, but the principle does not extend so far as to authorize a court of equity to set aside the valid stipulations of the parties upon the performance of which their rights depend. And where there is no controversy as to the balance due, *and a reasonable opportunity* is afforded for payment or tender, a tender of the amount due is a prerequisite to the right to invoke the jurisdiction of a court of equity to relieve from the forfeiture. —Carter v. Brownell Auto Co., 217 Ala. 690, 117 So. 304." (Italics supplied.)

■ The respondents insist that the complainant is not entitled to the relief prayed for, which involves the setting aside of

the forfeiture, because no tender is made in the bill of the amount that was due to be paid to the Coosa Lumber Company or to its successors, and that the bill wholly fails to aver that the complainant is ready, willing, and able to carry out the contract made by complainant's intestate with the Coosa Lumber Company.

As to the last contention, it may be noted that the bill is not one for specific performance of a contract, but to set aside a forfeiture and to restore an existing contract.

As to the failure of the bill to aver a tender of payment for the timber that complainant's intestate was to purchase on January 18, 1936, it may be observed that the complainant in his bill offers to do equity, and the court can so mold its decree as to require full payment of any amount due the Coosa Lumber Company, or its successors, as a condition to relief.

The offer to do equity confers jurisdiction upon the court to attach such conditions to the decree as are necessary to make it equitable. Cobbs v. Norville, 227 Ala. 621, 151 So. 576; Chandler v. Bodeker, 219 Ala. 357, 122 So. 435; 21 Corpus Juris 179, § 161. Under a bill containing general offer to do equity, the court, as a price of the decree, may let conscience have full play in accomplishing complete justice between the litigants. 21 Corpus Juris, 400, § 421.

■ Under the facts averred in the bill, which are unchallenged, it is our judgment and conclusion that to permit the forfeiture to stand in this case would be not only unjust and inequitable, but would be unconscionable. A court of equity will not refuse to grant relief from such a situation. The conduct of the Coosa Lumber Company and its successors, under the averments of the bill, cannot be sanctioned or approved, for, if the averments of the bill are true, and we must so regard them, they, the Coosa Lumber Company and their successors, have taken advantage of an unfortunate circumstance brought about by the death of Mr. Singleton, at a time when there was no one clothed with the power and authority to speak for him, or to represent his interest, in the matters, and at a time when, confessedly, they had in their coffers $2,006 of Singleton's money, and which was more than twice the amount that Singleton was due to pay at the time it was attempted to declare the forfeiture.

The case made by the bill as amended entitled the complainant to relief against the forfeiture invoked by the Coosa Lumber Company and its successors.

■ The next question to be determined is, Does complainant state a case in his bill which justifies injunctive relief? We think it does.

The bill not only avers that the respondent the Coosa Lumber Company and its successors have declared the contracts of complainant's intestate terminated and valuable property rights forfeited to them, but also shows that these respondents have taken possession of properties of complainant's intestate, and for which he had paid said respondents, and that said respondents are proceeding, through respondents Tatum and Daniels, to cut and remove the timber from the said lands which had been paid for by complainant's intestate.

Unquestionably, as averred in the bill, the cutting and removal of the timber from the lands will work an irreparable injury to the estate of complainant's intestate.

This court, in the case of Tidwell v. H. H. Hitt Lumber Co. et al., 198 Ala. 236, 73 So. 486, 489, L.R.A.1917C, 232, gave its approval to the following statement of the law taken from Story's Equity Jurisprudence, §§ 928 and 929: "Formerly indeed courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses. But now there is not the slightest hesitation if the acts done or threatened to be done to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in future. *. * * In short, it is now granted in all cases of timber, coals, ores, and quarries, where the party is a mere trespasser, or where he exceeds the limited rights with which he is clothed, upon the ground that the acts are, or may be, an irreparable damage to the particular species of property."

To the same effect are the holdings of this court in the cases of Lyon v. Hunt, 11 Ala. 295, 46 Am.Dec. 216, and Hamilton v. Brent Lumber Co., 127 Ala. 78, 28 So. 698.

Our judgment is, the bill contains equity, and that it makes a case calling for injunctive relief pending a determination of the cause.

It follows, therefore, that the decree of the circuit court refusing the injunction

184

must be, and is, reversed, and the cause will be remanded to the circuit court of Coosa county directing the judge of said court to issue the injunction in accordance with the prayer of the bill, upon the complainant's giving bond with sufficient surety, in such sum as the judge may direct, conditioned and payable as the statute requires.

Reversed and remanded, with directions.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.