93 So.2d 402

Mary Walters SCHERF

v.

J. W. RENFROE et al.

4 Div. 774.

Supreme Court of Alabama.

Feb. 21, 1957.

Rehearing Denied March 21, 1957.

Oliver W. Brantley, Troy, guardian ad litem and for appellees.

W. H. Albritton, Andalusia, John C. Walters, Troy, and Albrittons & Rankin, Andalusia, for appellant.

GOODWYN, Justice.

This is an appeal from a decree of the circuit court of Pike County, in equity. The case involves the construction of a property settlement agreement made a part of a divorce decree.

Mary Walters Scherf, appellant, and J. W. Renfroe, one of the appellees, were formerly husband and wife. In December, 1948, their marriage was dissolved by a decree of divorce rendered by the Pike County circuit court, in equity, on a bill filed by the wife. A property settlement agreement was incorporated into the divorce decree and approved by the court. The instant case turns upon the construction and effect to be given certain provisions of that agreement. The portions which are germane to the question here are as follows:

"5. Renfroe shall surrender to Mrs. Renfroe all right in the life insurance policies listed on the schedule hereto attached and to execute any and all assignments required by the insurance companies. Renfroe shall keep said insurance in force by promptly paying the premiums thereon before they become delinquent. In event of the remarriage of Mrs. Renfroe while Renfroe is still living she shall relinquish all rights in said policies to her said children.

"6. Renfroe shall immediately upon the execution of this agreement place in the hands of Mrs. Renfroe's attorney to be held in escrow pending the signing of a divorce decree and to be then delivered to her a deed containing full covenants of warranty with whatever instruments are necessary to vest in Mrs. Renfroe a good and merchantable title in the dwelling in Troy, Alabama, where she now lives with said children, subject only to property taxes not due and to a mortgage for the original amount of Four Thousand Eight Hundred and 00/100 ($4,800.00) Dollars in favor of First Farmers & Merchants National Bank of Troy, payable in monthly installments of Forty Eight Dollars ($48.00). Mrs. Renfroe shall have the full right to the use and enjoyment of said property together with the rent and income therefrom and the right to sell, lease or otherwise dispose of said property and to re-invest the proceeds but she shall not have the right to spend or use the proceeds except to invest them and she shall, as to purchasers, lessees and other third parties, be the absolute owner of said property, and they shall be under no duty as to the use to which the proceeds are put. As between the parties hereto the rights of Mrs. Renfroe with reference to said property shall be limited as follows:

" '(a) Her right to the use and enjoyment of said property shall terminate upon her death or remarriage, whichever event should happen first except that if Renfroe should die while Mrs. Renfroe is still living and unmarried her title to said property shall thereupon be absolute. Upon her death or remarriage while Renfroe is still living the paid property shall vest in the said children in equal shares per stirpes and in the event the said property had previously been sold, the proceeds thereof or the property in which said proceeds had been invested shall like-

38

wise pass to said children in like manner.

" '(b) The rents and income from said property shall, as long as Mrs. Renfroe remains unmarried, be hers absolutely but in the event of the sale or other disposition of said property the net proceeds thereof and any property in which said proceeds are invested shall be held subject to the same terms as herein provided with reference to the original property.'

"7. As long as Mrs. Renfroe remains unmarried and has not sold the property mentioned in the foregoing paragraph 6 Renfroe agrees to keep said property in good repair and to pay all taxes and assessments for municipal improvements thereon before they become delinquent, to promptly pay on or before they are due the installments on the mortgage on said property and to keep the said dwelling house adequately insured against fire and with extended coverage and with the loss payable first to the holder of said mortgage and the balance to Mrs. Renfroe.

"8. In the event Renfroe should fail to promptly pay the monthly payments herein mentioned in paragraph 3 or the premiums on the life insurance policies mentioned in paragraph 5 or the taxes and assessments or mortgage payments on the property mentioned in paragraph 7 or to perform any of his agreements herein contained or in any way interfere with her rights hereunder while Mrs. Renfroe remains unmarried her title to the said policies and to the said real estate mentioned in said paragraph 7 hereof shall become absolute notwithstanding anything herein to the contrary and she shall have the right to make said tax, insurance, mortgage or other payments and Renfroe shall be obligated to promptly refund said amounts to her. The legal or equitable remedies herein specified for the enforcement of the rights of Mrs. Renfroe shall be in addition to any other remedies she may have."

The life insurance policies mentioned in paragraph 5 and set out as an exhibit to the agreement are as follows:

| Policy Number | Date | Company | Amount |
|---|---|---|---|
| 18070341 | 12/26/41 | New York Life | $ 2,000.00 |
| 18361383 | 4/5/43 | New York Life | 1,000.00 |
| 5889503N | 12/14/43 | Mutual Life of N. Y. | 1,000.00 |
| 20133828 | 2/1/45 | New York Life | 10,000.00 |

At the time the divorce was granted the parties had four minor children, all of whom were placed in custody of the mother. When the present proceeding was instituted the ages of the children were 9, 19, 22 and 24. All of the children were made parties-respondent to the bill.

Both J. W. Renfroe and appellant have remarried and now have children by their second marriages. Mrs. Scherf remarried in 1950.

In her bill Mrs. Scherf alleges that Renfroe breached the property settlement agreement in allowing two of the insurance policies, one for $2,000.00 and one for $10,000.00, to lapse in 1949, prior to appellant's remarriage.

Appellant contends that on lapse of the insurance policies the title to the house vested absolutely in her under the provisions of paragraph 8 of the property settlement agreement.

J. W. Renfroe disclaimed any interest in the property. A guardian ad litem was appointed to represent the minor respondents and he has appeared and filed a brief in their behalf on this appeal.

The question presented concerns the title to the house and lot in Troy which was the home of the parties at the time of the divorce. As we see it the disposition of this property must be based upon the construction and effect given certain clauses of the property settlement agreement, particularly paragraphs 6 and 8.

There appears to be no question that Renfroe breached the contract by failing to pay the premiums on two of the insurance policies, thus allowing them to lapse prior to appellant's remarriage, as alleged in the bill. This brings us to the specific point to be decided: Did absolute title to the real estate vest in appellant on this breach?

 Appellees insist that paragraph 8 should not be given effect because (1) it is in conflict with the preceding provisions of the contract, specifically the provisions of paragraph 6, and (2) because it would work an inequitable forfeiture of the rights of the children. These contentions were sustained by the trial court. Having decided that the contract was ambiguous and that paragraph 8 could not be reconciled with the preceding provisions, the court applied the following principles:

"* * * [I]nconsistencies in contracts are to be reconciled, if susceptible of reconciliation, and if not, the doubt will be resolved in favor of the first clause as expressing the agreement and intention of the parties within the law (Lowery v. May, 213 Ala. 66, 104 So. 5), and when considered in and collected from the entire instrument. Bryant v. Stephens, 58 Ala. 636." G. F. A. Peanut Ass'n v. W. F. Covington Planter Co., 238 Ala. 562, 566, 192 So. 502, 506.

"* * * [I]n construing instruments containing contradictory or ambiguous clauses, the first expression of the intention of the parties will govern, unless the intention to thereafter qualify is plainly expressed; and * * * where the subsequent clause is of doubtful import, it will not be held to contradict the preceding or more certain clause. * * *" Irwin v. Baggett, 231 Ala. 324, 326, 164 So. 745, 746.

 We recognize the soundness of these principles, but do not consider them applicable to the contract before us. While the contract is complex, we do not think it it is ambiguous. The provisions of paragraphs 6 and 8, when considered separately and not as part of the agreement as a whole, do appear to be contradictory. But when considered together with the other provisions of the agreement it seems to us that both paragraphs have a definite place in the overall agreement. A contract must be construed as a whole and, whenever possible, effect will be given to all of its parts. The court will look to all of its provisions and the object to be accomplished. Penn Mut. Life Ins. Co. v. Fiquett, 229 Ala. 203, 207, 155 So. 702; Chapman v. Nitrate Agencies Co., 225 Ala. 650, 652, 144 So. 810; 17 C.J.S., Contracts, § 297, p. 707.

 The conclusion is inescapable that under the express terms of the contract appellant acquired absolute title to the real estate upon breach of the contract by Renfroe. Although limitations on appellant's title are set forth in paragraph 6 such limitations are subject to the provisions of paragraph 8 which provide, in effect, that these limitations shall terminate in event of Renfroe's failure to perform his agreements.

This brings us to the question whether the provision in paragraph 8 that appellant's title to the real estate should "become absolute notwithstanding anything herein to the contrary" upon a breach by Renfroe operates as a forfeiture which equity will not enforce. The position taken by appellees is that the provisions of paragraph 8 amount to an unconscionable forfeiture

of the rights of the children from which equity should grant relief.

The portion of the trial court's opinion which deals with the supposed forfeiture aspect of the contract is as follows:

"* * * If said paragraph [8] was meant to override the prior provisions of said contract, it could amount to nothing more than a forfeiture. The children were named in the agreement and, under the provisions thereof, it became a contract for their benefit. Aside from paragraph 8, the life insurance and home went to them upon their mother's remarriage. It is apparent from the contract through paragraph 7, that absolute title to the property was never to vest in Mrs. Renfroe unless Mr. Renfroe died before she remarried. Why then should a forfeiture be worked against the children, all of whom were, at the time of the alleged failure to act, minors, by a breach by their father over which they had no control?

"'Forfeitures are not favored in equity and unless the penalty is fairly proportionate to damage suffered by the breach, relief will be granted when the court can give by way of compensation all that can reasonably be expected.' Humphrey v. Humphrey, [254 Ala. 395] 48 So.2d 424 [31 A.L. R.2d 315]; Dean v. Coosa County Lumber Co., 232 Ala. 177 [167 So. 566].

"If Renfroe had kept the two insurance policies in force, upon the remarriage of Mrs. Renfroe they would have vested in the children and not in her. She chose not to make payments of the premiums even though the evidence submitted by her shows that notice that the premiums were due and also notice that they would lapse if not paid within a given time were mailed to her. Under paragraph 8 of the contract she could have made the payments and enforced repayment from

him. This Court cannot see how Mrs. Renfroe, personally, has suffered any detriment by the breach of her husband. If this suit was by her to vest title to the property *in the children,* it would present a different picture. But the effect of this suit is to divest the children of the property and vest it in the mother. Even though the policies were but 20 year term contracts the premiums should have been paid by the father so that the children would have their protection in event of his death, but since they were allowed to lapse it seems entirely inequitable that the rights of the children should be forfeited in the home because of their father's mistake."

▮ The power of a court of equity to grant relief from an unconscionable forfeiture is well-established. Humphrey v. Humphrey, 254 Ala. 395, 396, 48 So.2d 424, 31 A.L.R.2d 315; Dean v. Coosa County Lumber Co., 232 Ala. 177, 182, 167 So. 566; Hunter-Benn & Company v. Bassett Lumber Co., 224 Ala. 215, 218, 139 So. 348; Barton v. W. O. Broyles Stove & Furniture Co., 212 Ala. 658, 659, 103 So. 854; 30 C.J.S., Equity, § 56, p. 393; 19 Am.Jur., Equity, § 88, p. 99. However, we do not think this principle has application to the contract before us.

▮ Appellees recognize that there can be no forfeiture so far as Renfroe is concerned for the obvious reason that he was completely divested of all interest in the property by the very terms of the contract whether he performed the conditions therein imposed on him or not. As already noted, their insistence is that the failure of Renfroe to perform his agreements operated as an inequitable forfeiture of the rights of the children. But the rights of the children are limited by and subject to the conditions of the same contract which gives them whatever interest they might acquire in the property. Before the contract was executed the children had no interest whatever in the property and after its execution

they acquired no interest except that given by the terms of the contract. They are not parties to the contract but are conditional beneficiaries thereunder. There is no question that the parties to the contract (the mother and father) could have provided, in the first instance, that title to the property completely vest in the mother immediately upon execution of the contract, for the children, as such, had no title to their parents' property and could not have prevented them from conveying, one to the other, any property either owned. Clearly, then, whatever interest the children might have in the property is by virtue of their parents' separation agreement. And that agreement (paragraph 8) specifically provides that the mother's title shall become absolute, notwithstanding anything in the agreement to the contrary, upon failure of the father to perform any of the agreements therein imposed on him. This provision, it seems to us, is no more than a simple condition subsequent which the parents had the right to include as a part of their separation agreement. We do not think it is a provision for a forfeiture against rights of the children, for their rights are subject to this condition. They could acquire no vested right in the property except on the death or remarriage of their mother during the lifetime of their father (par. 6 (a)); but another condition (failure of the father to pay the insurance premiums) operated to vest absolute title in the mother before her remarriage. And there is no provision for divesting the title out of the mother after the absolute vesting of title in her under paragraph 8.

" * * * It is not the province of the court to make contracts for the parties, but its duty is confined to the interpretation of the one which they have made for themselves without regard to its wisdom or folly. As said by this court in * * * Union Central Relief Ass'n v. Johnson, 198 Ala. [488] 491, 73 So. 816, 817: 'Where the language is unambiguous, and but one reasonable construction of the contract is possible, the court must expound it

as it is made by the parties.' * * * " Oates v. Lee, 222 Ala. 506, 507, 133 So. 44.

See, also 17 C.J.S., Contracts, § 319, pp. 741–742.

The decree appealed from is reversed and the cause remanded to the trial court for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.