174 So. 779

## CITY OF SHEFFIELD v. HOME INS. CO.

### 8 Div. 761.

Supreme Court of Alabama.

April 15, 1937.

Rehearing Denied June 17, 1937.

Stockton Cooke, Jr., White & McDonnell, and W. F. McDonnell, all of Sheffield, for appellant.

W. H. Mitchell, of Florence, amicus curiæ.

F. W. Davies and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellee.

FOSTER, Justice.

The question in this suit is whether the Home Insurance Company is liable to the City of Sheffield for an amount of license calculated on gross premiums received by it on policies of insurance or certificates of coverage on automobiles sold by dealers in Sheffield on deferred payments for the years 1931 to 1935. The insurance company has a local agency in Sheffield, through which it insures other property there, and has paid the city the license calculated on the amount of premiums derived from those contracts.

In respect to the business here in question for each of those years, it issued to Commercial Credit Company and Universal Credit Company, each, a separate "master" policy contract. The Commercial Credit Company had its home office in Baltimore, Md., and an office in Birmingham, Ala. It does not appear to have an office in Sheffield. The Universal Credit Company had its home office in Detroit, Mich., and an office in Memphis, Tenn., but none is alleged to exist in Alabama. The Home Insurance Company is a foreign corporation, doing business in Alabama, under authority of law, with an agency in Birmingham as well as Sheffield, Ala. The two master policies referred to were executed at Birmingham, Ala., by a licensed resident agent of the insurance company. There is no essential difference in their form which is here pertinent. The assured in each is the credit company, and the automobile purchaser to be, payable to them as their respective interests may appear. It is not limited to any definite territory, nor city.

Briefly, the method of doing business is as follows: An automobile dealer in Sheffield sells a car, partly on time with deferred payments. The purchaser executes a conditional sales contract with the dealer in Sheffield, containing a stipulation by which the dealer is authorized to insure the property at the purchaser's expense. The amount of the premium is figured in the amount of the deferred payments. The dealer sells that sales contract, and sends it by mail to the credit company in Birmingham or Memphis with an unqualified indorsement, which carries an insurable interest to the credit company on the car. The credit company (at Birmingham or at Memphis, respectively) notifies its home office (at Baltimore or Detroit, respectively), and that office makes application to the insurance company (at Baltimore and Detroit) for a certificate covering the purchase. The insurance company (at Baltimore or Detroit) then prepares and executes such certificate, covering both the purchaser and credit company, and mails it, postage prepaid, to the purchaser at his residence address in Sheffield, with a copy to the credit company (at Birmingham or Memphis). The credit company pays the premium to the insurance company, and it is refunded by the purchaser, upon payment of the installments.

The General Revenue Act of 1927, p. 148, § 3, at page 150, is the state law here

applicable. It authorizes cities to exact a maximum license of 4 per cent. of "gross premiums, less return premiums, on policies issued during the preceding year on property located in such municipality," and to make a flat rate on new companies with an adjustment "at the expiration of such year upon such percentage as may be fixed by said municipality; and provided further that such percentage shall not exceed 4 percent of the gross premiums, less return premiums collected by such companies on policies issued during the preceding year in such municipality." The license schedule as adopted for the city fixes a percentage (now agreed to be 2½ per cent.) of the gross premiums as provided in section 2156, Code, and for new companies $25. That section of the Code is somewhat different in its terms from the act of 1927, supra, which controls this situation, since it rewrote the law on the subject, and by implication superseded section 2156, Code. There is nothing to the contrary in American Standard Life Ins. Co. v. State, 226 Ala. 383, 147 So. 168.

The ordinance will be referred to the law which authorizes it, although it mentions the Code section as its authority.

The insurance company during the years in question was doing the business of making insurance contracts through its agents located in Sheffield, but they did not make contracts for automobile insurance under the circumstances here stated. But, since it was engaged in such business in Sheffield, that city had the right to impose a license within the limits and on the terms prescribed by the act of 1927, supra.

It is not so much a question of whether the method of transacting the business here described was a doing of business in Sheffield when separately considered, but whether such business created a gross premium on which the city had a right to calculate the amount of license which it was authorized to charge for doing business in Sheffield.

We infer from the statement of facts that at the time of the coverage the property insured and its owner for whose benefit it was issued (as well as for the credit company) were located in and a resident of Sheffield, each respectively. Such resident and owner was the person on whom the incidence of the payment rested. He paid the premium to the credit company, which was thereby reimbursed for having advanced it for him. When he purchased the property, he gave the dealer the necessary information to procure the policy, and it was given and taken for that purpose, and was so acted upon. Whatever premiums were paid were under the terms of the master policy and referable to it. It made no reference to Sheffield more than any other city in the state, but Sheffield was within the territory over which it extended. It was contemplated, therefore, that purchasers of cars on the plan indicated would have its benefits.

The act of 1927, supra, deals with two conditions, one, where the company did business in the city the preceding year; and one where it did no such business but was what was called a new company. As to the first, the license is computed on the amount of gross premiums, less return premiums, "on policies issued during the preceding year on property located in such municipality." Gen.Acts 1927, pp. 148, 150, § 3. There is a somewhat different verbiage used in making adjustment at the end of the year with the new companies. It must be computed on "gross premiums, less return premiums, collected by such companies on policies issued during the preceding year in such municipality," (page 151, § 3), not "on property located in such municipality," as above.

The argument is that the clause relating to new companies should be taken to qualify that relating to the first class, so that it is only when the policy is issued in the municipality, as well as on property there located, that the rule applies. There was probably no intention to make a different rule applicable in that respect to the different classes of companies due to pay the license tax. We think that the clause relating to new companies does not limit the city to such premiums as resulted from policies which may have been executed in the physical boundaries of the city. Section 2156, Code, uses the words in that connection, "on risks in such municipality." That means, as to fire insurance, on property there located.

We do not think the act of 1927, supra, was intended to make any material change in that respect. The acts should not be so construed as to misapply the evident legislative intent. When so considered, the language of Judge Holmes in Equitable Life Assur. Society v. Pennsylvania, 238 U.S. 143, 35 S.Ct. 829, 830,

59 L.Ed. 1239, is pertinent: "We are dealing with a corporation that has subjected itself to the jurisdiction of the state [and here also to Sheffield]; there is no question that the state [and Sheffield here] has a right to tax it, and the only doubt is whether it may take this item into account in fixing the figure of the tax. Obviously the limit in that regard is a different matter from the inquiry whether the residence of a policy holder [or location of property insured] would of itself give jurisdiction over the company." And: "We may add that the state profits the company equally by protecting the lives insured [or property covered], wherever the premiums are paid. The tax is a tax upon a privilege actually used. The only question concerns the mode of measuring the tax" (with citation); and "it is not unnatural to take the policy holders residing in the state as a measure without going into nicer, if not impracticable, details."

We may add that the property insured is protected by Sheffield for the insurance company against the very hazards which it insures, and thereby lessens the risk assumed. See Phœnix Assur. Co. v. Fire Department of Montgomery, 117 Ala. 631, 23 So. 843, 42 L.R.A. 468.

This situation is governed by somewhat different principles which apply when the only transaction of business in the city or state by the insurance company is in connection with the certificate of coverage issued under such arrangement as here contemplated. When the master policy is not executed in the state, some authorities have worked out a theory that the dealer who sells the car and takes a statement from the purchaser and sends it to the insurance company is an agent of the insurance company, when such arrangement is contemplated by the master policy; and that his conduct, and that of adjusting and investigating such losses as may occur in the city under that coverage, are the doing of a business which is subject to license. Chrysler Sales Corporation v. Smith (D. C.) 9 F.(2d) 666; Chrysler Sales Corporation v. Spencer (D.C.) 9 F.(2d) 674; Palmetto Fire Ins. Co. v. Conn, 272 U.S. 295, 47 S.Ct. 88, 71 L.Ed. 243; Home Ins. Co. v. Scharnagel, 227 Ala. 60, 148 So. 596; Commercial Mut. Acc. Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782.

That situation and the one applicable to the instant suit are readily distinguishable from another line of cases relied on by appellee. State of Vermont v. International Paper Co., 96 Vt. 506, 120 A. 900, 32 A.L.R. 632; St. Louis Cotton Compress Co. v. Arkansas, 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297. See authorities listed in 32 A.L.R. 636; 1 A.L.R. 1666; Allgeyer v. Louisiana, 165 U.S. 578, 580, 17 S.Ct. 427, 41 L.Ed. 832. They seem to support the following principle: The state in which is located the property insured and in which the insured resides and in which the insurer, a foreign corporation, is not otherwise engaged in business, has no jurisdiction to tax or regulate the business of the insurer in respect to a contract which is negotiated and executed wholly in another state in which the loss is payable, and its adjustment is to be made by the terms of the contract. Such is not the situation in any material respect with which we are dealing.

We think the judgment should have been for plaintiff. We remand the cause so that the proper amount may be calculated.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.