279 So.2d 512

**STATE FARM MUTUAL AUTO INSURANCE COMPANY**

v.

**BOARD OF TRUSTEES OF FIREMEN'S PENSION AND RELIEF FUND.**

**BOARD OF TRUSTEES OF FIREMEN'S PENSION AND RELIEF FUND**

v.

**STATE FARM MUTUAL AUTO INSURANCE COMPANY.**

SC 158, 158X.

Supreme Court of Alabama.

June 7, 1973.

Rives, Peterson, Pettus, Conway & Burge and Clarence M. Small, Jr., Birmingham, for appellant.

William A. Thompson, Birmingham, for appellee.

MADDOX, Justice.

The sole issue presented by this appeal is whether State Farm Mutual Automobile Insurance Company is a "fire insurance company" within the meaning of a state statute which requires each fire insurance company to pay a percentage of its gross fire premiums into a Firemen's Pension and Relief Fund. The statute involved is Act No. 307, Acts of Alabama, 1943. Section 11(C) in pertinent parts provides:

" . . . That each *fire insurance company*, whether a mutual company or otherwise, qualified to do business under the laws of Alabama, and doing business in such city, shall annually and on or before the first day of Marfh (sic) of each year hereafter, pay into said Firemen's Pension and Relief Fund, a sum equal to one and one-half per centum of the gross premiums, less returned premiums, received by such *fire insurance company* for and on account of business, including all renewals of *fire insurance*, done by it in such city, during the preceding year; and it shall not be lawful for such *fire insurance company* or its agent, to take or receive any premium for *insurance against fire* within such city, unless such *fire insurance company* shall pay, at the time aforesaid, to the said Firemen's Pension and Relief Fund, the amount herein provided to be paid by such fire insurance company; and any such fire insurance company violating the provisions of this act shall forfeit to the said Firemen's Pension and Relief Fund the sum of one thousand dollars, to be recovered against such fire insurance company so violating said provisions, or its agent, by suit brought in the name of the said Board of Trustees of the Firemen's Pension and Relief Fund.

\* \* \* \* \* \*

Provided, however, that the said sum equal to one and one-half per centum of gross premiums, less return premiums, required by this paragraph (c) of this section 11 to be paid by fire insurance companies into said Firemen's Pension and Relief Fund shall be treated and held to be a part of the maximum of four per cent (4%) on each one hundred dollars, or major fraction thereof, of gross premiums, less return premiums, which any municipal corporation may by law impose upon any fire insurance company in any one year as a license or privilege tax for the privilege of doing business in such municipality during such year under Section 160.10 of Section 348, Chapter 8 Article 13 of the General Revenue Act of 1935 approved July 10, 1935. . . ." (Emphasis added)

The Board of Trustees of the Firemen's Pension and Relief Fund (hereinafter referred to as Firemen's Pension Fund) filed a declaratory judgment action against State Farm alleging that the Firemen's Pension Fund was established in the City of Birmingham by authority of Act No. 307, supra. Firemen's Pension Fund's complaint alleged that State Farm was at all material times a "fire insurance company" doing business in the City of Birmingham, taking and receiving premiums "for insurance against fire within said city."

After trial, the court found that a justiciable controversy existed and that State Farm's position was based on a good faith interpretation of the statute which led it to believe that it was not subject to the Act's provisions, and that such position was taken openly without the intent of evading or refusing to pay any sums due. However, the court determined that State Farm was a "fire insurance company" within the meaning of the statute, and was liable for the license or tax imposed by it and that its liability was measured by the premiums received by State Farm for automobile physical damage insurance sold on property located in the City of Birmingham, and granted a money judgment in favor of the Board of Trustees of the Firemen's Pen-

sion and Relief Fund against State Farm for the sum of $75,444.06.

Errors relied upon by State Farm include (1) the finding that State Farm is a "fire insurance company" within the meaning of the Act, (2) the determination that the writing of automobile physical damage insurance, a portion of which is protection against fire risk, is sufficient basis for including State Farm in the classification of fire insurance companies within the ambit of the Act.

State Farm further argues that, assuming it may be classified as a "fire insurance company" under the Act, it was error to calculate its liability on the basis of premiums received for collision and comprehensive insurance on automobiles. In other words, State Farm says that if it is liable at all under the Act, its obligation to contribute to the Firemen's Pension Fund should have been limited to one and one-half percent of that portion of the comprehensive premium which is allocable to insurance against loss caused by fire.

The Firemen's Pension Board filed cross-assignments of error and a motion to dismiss the appeal.

We come first to what we think is the main question: "Is State Farm a fire insurance company under Act 307?"

To answer this question, we must interpret what the legislature intended when it used the words "fire insurance company" in Act 307.

 The legislature, in the statute, did not favor us with a definition of "fire insurance company." In arriving at a definition, this Court must consider legislative intent, which has been declared to be the most important criteria in statutory construction. Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343 (1929). First, it appears that the purpose of the

Act was to provide a method for raising money for the use and benefit of the fire department in the designated cities. Cf. Home Ins. Co. v. Cobbs, 20 Ala.App. 491, 103 So. 165 (1925). The right to impose a levy against fire insurance companies for the benefit of firemen is not here questioned. This Court has determined similar levies are valid. Phoenix Assur. Co. v. Fire Dept. of City of Montgomery, 117 Ala. 631, 23 So. 843 (1897).

We now come to the central question. Was State Farm a "fire insurance company?"

The Firemen's Pension Fund contends that the trial court correctly determined that State Farm was a "fire insurance company" on the authority of three Alabama cases, Motors Ins. Corp. v. City of Birmingham, 269 Ala. 339, 113 So.2d 147 (1959); City of Sheffield v. General Exchange Ins. Corp., 234 Ala. 386, 174 So. 782 (1937); and City of Sheffield v. Home Ins. Co., 234 Ala. 382, 174 So. 779 (1937). Each of those cases involved the question of the right of a municipality to impose a license tax on a company writing automobile physical damage insurance under a classification as a "fire insurance company." This Court answered the question in the affirmative.

Regarding municipal license taxes, the legislature has divided insurance companies into two broad classifications, (1) fire and marine insurance companies, and (2) insurance companies other than fire and marine. Title 37, §§ 736, 739, Code of Alabama, 1940.[1]

The Firemen's Pension Fund argues that the classification of fire insurance companies in Title 37, § 739, which authorizes the imposition of a municipal license tax, is the classification intended to be applied under Act 307. We do not think so. We note that during the five tax years here in-

1. The new Alabama Insurance Code, effective January 1, 1972, defines several types of insurance, but the definitions contained are specifically inapplicable to the construction of Title 37, §§ 736 and 739. Act 407, Acts 1971, Chapter 5, p. 757 et seq., Tit. 28A, §§ 87–94, Code of 1940, Recomp.1958, as amended.

volved (1964–1968) State Farm filed a certificate in connection with the Birmingham municipal license tax imposed pursuant to Title 37, § 739, *only* on what State Farm calculated was the *fire* portion of the comprehensive premium on its automobile property damage policies.

■ As we view it, however, the tax imposed by Act 307 is not a municipal license tax imposed pursuant to Title 37, §§ 736 and 739. While Act 307 provides that the one and one-half per centum of gross premiums shall be treated and held to be a part of the maximum of four per cent of gross premiums which any municipal corporation may by law impose upon any fire insurance company as a license or privilege tax, the one and one-half per centum is a separate levy and goes into a different fund.[2]

■ The Firemen's Pension Fund argues that the Firemen's Pension Tax is a *municipal license tax* because "automobile physical damage insurance is the business of a fire insurance company and that an insurance company writing automobile physical damage insurance is a fire insurance company within the meaning of the license tax here involved (Act No. 307, 1943) and Section 160.10 of Section 348, General Revenue Acts of 1935 (Section 739, Title 37, Code of Alabama). . . ."

While the *Motors Ins. Corp.* case and the two *City of Sheffield* cases cited by appellee are persuasive authority for the proposition that the words "fire insurance company" in Act 307 include a company which writes automobile physical damage, we are not convinced that the legislature, in Act 307, intended the words "fire insurance company" to be so broad. In the *Motors Ins. Corp.* case, this Court observed that the question as to whether or not *Motors* was properly classified as a fire insurance company within the meaning of Title 37, § 739 was "not free of difficulty."

This Court pointed out:

"The position taken by Motors to the effect that it is not reasonable to classify it as a fire insurance company for the reason that it issues and sells only automobile physical damage insurance is also refuted by Motors' own conduct. In each of the years involved in this litigation Motors represented to the State Department of Insurance by sworn statements that it was a 'fire or marine' insurance company and thereby paid a premium tax of 1½% on gross premiums instead of 2½% as required of insurance companies other than fire and marine. § 816, Title 51, Code 1940, as amended by Act 156, approved June 23, 1945, General Acts 1945, p. 196. We are not here concerned with later amendments to § 816, supra. We do not wish to be understood as indicating that such conduct on the part of Motors operates as an estoppel against it in this case. However, such conduct can be considered as an admission by Motors that it is in fact what its charter says it is, a fire insurance company.

"The position taken by Motors is also without support in the testimony in this case which came from expert witnesses. Two witnesses called by the city, both of whom were shown to have had long experience in the insurance field, testified to the effect that automobile physical damage insurance has been written consistently by fire insurance companies, and that a company which writes automobile physical damage insurance falls within the broad classification of an insurance company which writes fire and allied lines." 269 Ala. at 343, 113 So.2d 147 at 150.

2. The city license tax on fire and marine premiums was 2½% of the net premiums as authorized by Title 37, § 739, Code, 1940. The premium subject to the Firemen's Pension Tax was 1½%, making a total of 4%. The city, in administering the tax on fire premiums, required the taxpayer to pay the *Firemen's Pension Tax* by "separate check or money order." Apparently, State Farm did not pay any license tax as a "fire insurance company."

While persuasive, we do not think the *Motors* decision is controlling here. We are construing a different statute, with a different purpose. The ordinance in *Motors* involved a license for general municipal purposes, whereas Act 307 provides revenue to benefit the fire departments of cities which come within the classification of the Act. We conclude that the legislature intended in Act 307 that every insurance company insuring property against loss by *fire* would be considered to be a "fire insurance company" and that it would be liable to pay into the Firemen's Pension and Relief Fund "a sum equal to one and one-half percentum of the gross premiums, less returned premiums, received by such fire insurance company for and on account of *business,* including all renewals of *fire insurance."* The *Motors* case is also partly distinguishable, in that in *Motors* the company was chartered as a fire insurance company and so listed itself for state tax purposes and paid a lower rate of tax to the state because of such classification. Conversely, State Farm was not chartered as a fire insurance company and paid a higher state tax as a company other than a fire or marine or fire and marine insurance company.

We do not wish to be misunderstood. We are attempting to determine legislative intent regarding Act 307. Even though a company is not named a fire insurance company, it would be a fire insurance company if it issued policies of fire insurance. LaSalle Fire Ins. Co. v. Jenkins, 185 Ark. 484, 47 S.W.2d 792 (1932).

The decision we here reach is limited solely to the question of whether State Farm is a "fire insurance company" under Act 307. Since State Farm insured property in the City of Birmingham against loss by fire then it must be considered to be a "fire insurance company" under Act 307. Therefore, we affirm the determination of the trial court in this regard. However, the liability of the company cannot be predicated upon the total automobile property damage business done by State Farm during the five tax years. Act 307 specifically says that the liability is "a sum equal to one and one-half percentum of the gross premiums, less returned premiums, received by such fire insurance company for and on account of business, including all renewals of *fire insurance."* The measure of liability of State Farm under the Act, therefore, is a sum equal to $1\frac{1}{2}\%$ of that portion of the comprehensive premium which is allocable to insurance against loss caused by fire. We do not determine what this sum is, but note that State Farm filed with the City of Birmingham a computation which State Farm claimed represented a portion of the comprehensive premium allocable to the fire risk for the tax years in question.[3]

The Firemen's Pension Fund cross-assigns error and argues that the court should not have eliminated penalties and interest, on rehearing. The original money judgment, including penalties, interest and the erroneous inclusion of a tax year in which the statute of limitations had run, was in the total sum of $126,580.38. The appellee does not question the erroneous inclusion of one tax year on which the statute of limitations had run. The appellee also filed a motion to dismiss the appeal on the ground that the appeal was not timely filed.

■ We find no merit in appellee's cross-assignment of error. The payments

---

3. The following reflects the total comprehensive premiums State Farm says it received from policyholders giving a Birmingham address, the percentage applied on the basis of fire claims paid during the year, and the amount thus determined to allocate a portion of the comprehensive premium to fire risks and the fire loss portion is the amount certified to the City of Birmingham as the net "fire" premiums received during the preceding year:

| "YEAR | COMPREHENSIVE PREMIUMS | | % | | FIRE LOSS PORTION |
|---|---|---|---|---|---|
| 1963 | $221,901.61 | x | 19.6 | — | $43,492.72 |
| 1964 | 234,974.34 | x | 15.7 | — | 36,890.97 |
| 1965 | 266,921.65 | x | 12.8 | — | 34,165.97 |
| 1966 | 340,394.33 | x | 12.8 | — | 43,570.47 |
| 1967 | 356,593.81 | x | 10.7 | — | 38,155.54" |

required to be made to the Firemen's Pension and Relief Fund by Act 307 are not "taxes" as that term is used in the Revenue Acts of Alabama, but are "fees imposed on the writing of all fire insurance." City of Birmingham v. Home Ins. Co., 240 Ala. 195, 198 So. 716 (1940). We think that it was within the power of the court to deny interest, especially since the court specifically found that State Farm was not guilty of bad faith. 47 C.J.S. Interest § 3, p. 13 (1946). The same holds true with regard to the penalties which the court initially imposed but removed on rehearing. The power of an equity court to grant relief from an unjust forfeiture is well established. Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424 (1950); Dean v. Coosa County Lumber Co., 232 Ala. 177, 167 So. 566 (1936); Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348 (1932); Barton v. W. O. Broyles Stove & Furniture Co., 212 Ala. 658, 103 So. 854 (1925). In Dean v. Coosa County Lumber Co., supra, the Court stated:

"[I]t may be stated, as a general rule of equity jurisdiction, that the hard and harsh remedy of forfeiture yields to compensation when fair dealing and good conscience require it." 232 Ala. at 182, 167 So. at 571.

■ Appellee's motion to dismiss the appeal is also without merit. Appellee contends that the appeal should have been perfected within 30 days from the rendition of the final decree, as provided for in Title 37, § 767, Code, 1940. In the first place, that statute applies to appeals in actions filed by *municipalities* to enjoin the doing of business by one subject to a license or excise tax imposed by the "petitioning municipality." Here, the petitioner was the Firemen's Pension Board, not the City of Birmingham, and the petition was one for declaratory judgment. Title 37, § 767, is completely inapplicable to this appeal and the motion to dismiss is due to be and is hereby denied. The decree of the trial court is due to be affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part; and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.