BEATTY, Justice.
This is an appeal from a judgment in favor of the plaintiff, State Farm Mutual Automobile Insurance Company, Inc. (State Farm), in its declaratory judgment action against the City of Birmingham (Birmingham) and the latter’s counterclaim. We affirm.
The action grew out of Birmingham’s interpretation and application of Code of 1975, § 11-51-120 to State Farm and its refusal to apply, instead, the provisions of § 11-51-121. Those taxation statutes allow a municipal corporation to impose a privilege tax under this pertinent language:
§ 11-51-120. Insurance companies — Fire and marine insurance companies.
No license or privilege tax shall be imposed by any municipal corporation upon any fire or marine insurance company doing business in such municipality except upon a percentage of each $100.00 of gross premiums, less return premiums, on policies issued during the preceding year on property located in such municipality. Such percentage shall not exceed four percent on each $100.00 or major fraction thereof of such gross premiums,

§ 11-51-121. Same — Insurance companies other than fire and marine insurance companies.
(a) No license or privilege tax . shall be imposed by any municipal corporation upon any insurance company, other than fire and marine insurance companies, . . which shall exceed . the following amounts:

(4) Each such insurance company, in cities and towns having a population of more than 50,000, $50.00 and $1.00 on each $100.00 and major fraction thereof of gross premiums, less return premiums, received during the preceding year on policies issued during said year to citizens of said cities and towns.
The basis of the lawsuit is Birmingham’s assertion that § 11-51-120 applies to State Farm, not § 11-51-121; that is, that State Farm Mutual Automobile Insurance Company (not to be confused with its subsidiary company, State Farm Fire and Casualty Company) is a “fire insurance company” issuing policies “on property located” in Birmingham, and therefore that State Farm is obliged to pay a privilege tax of four percent on each $100.00 of its gross premiums earned in Birmingham. State Farm’s position is that it is a “casualty insurance” company and therefore is an insurance company “other than fire and marine,” and thus is obligated to pay the lesser privilege tax of one percent on each $100.00 (plus $50.00) called for under § 11-51-121.
Having been unable to resolve the question administratively, State Farm brought *1113 this action to have the Jefferson County Circuit Court declare that it should be taxed under § 11-51-121. By counterclaim Birmingham sought to make State Farm liable for privilege taxes for 1978 and retroactively to 1973, plus penalties and interest for State Farm’s refusal to pay the amount allegedly owed. Following an evidentiary hearing the trial court declared that State Farm was not a fire insurance company under § 11-51-120, but was a company “other than [a] fire and marine insurance edmpan[y]” and thus subject to § 11-51-121. Birmingham appeals.
The issues presented by the parties focus initially upon the interpretations to be given these two statutes. Birmingham insists that these statutes and their predecessors, Act No. 163, Acts of Alabama, 1927, pp. 150-151; Act No. 194, Acts of Alabama, 1935, pp. 552-553; Tit. 37, §§ 736 (“other than fire and marine insurance companies”) and 739 (“any fire or marine insurance company”), established classifications based upon “property” or “people.” There is, states Birmingham, one classification authorizing a tax measured by four percent of premiums received from policies “on property located in [the] municipality” (see § 11-51-120), while another classification authorizes a tax measured by one percent of premiums received from policies issued “to citizens of said cities and towns” (see § ll-51-121(a)(4)). According to Birmingham, these are separate classifications which relate to the business, conducted, and the business conducted by State Farm is the selling of “automobile physical damage insurance.” That kind of insurance, Birmingham contends, is “property” insurance which is a class of “fire insurance,” making State Farm a fire insurance company. Birmingham cites as authority for this proposition several cases, including City of Sheffield v. Home Insurance Co., 234 Ala. 382, 174 So. 779 (1937); City of Sheffield v. General Exchange Insurance Corp., 234 Ala. 386, 74 So. 782 (1937); and Motors Insurance Corp. v. City of Birmingham, 269 Ala. 339, 113 So.2d 147 (1959).
The decisions in the Sheffield cases were based upon stipulations of facts. It is apparent that neither of those cases dealt with the nature of the insurance companies involved therein — it appears to have been assumed for the question in issue that the insurance companies were “fire and marine” companies and thus subject to the rate of up to four percent of gross premiums. The basic question litigated concerned the municipality’s right to tax the companies at all because of the novel way in which the policies were sold. This Court held in both cases that the city could impose the tax, even though the policies were issued outside the city, because the nature of the transactions involved insurance business conducted in Sheffield where the insured property, automobiles, was. located.
In Motors this Court held that for the purpose of the municipal license statute Birmingham could classify Motors Insurance Corporation as a “fire insurance” company even though the only insurance it had issued since its organization was automobile physical damage insurance. That decision was based upon several considerations. For one thing, the insurance issued covered risk of loss by fire, as well as theft, collision and “comprehensive” coverage. For another, Motors had represented to the State Department of Insurance for many years that it was a “fire or marine” company and paid a premium tax accordingly. And finally, Motors itself was chartered as a fire insurance company. It is .significant, also, that Motors Insurance Corporation insisted that automobile physical damage insurance had become a separate class of insurance from ordinary fire insurance and, therefore, that a company which issued the former could not be classified as a fire insurance company. The Court in Motors referred (at 269 Ala. 342, 113 So.2d 147) to the stipulation contained in City of Sheffield v. General Exchange Insurance Corp., supra, which identified General as organized as and engaged in a fire insurance business (and selling only automobile physical damage insurance), and added at 342-3, 113 So.2d at 149-150:
The case is significant, ... in that it refutes entirely, . . . the insis *1114 tence of able counsel for Motors . that it cannot be reasonably asserted that a company which issues and sells only automobile physical damage insurance is a fire insurance company within the meaning of § 739, Title 37, [now § 11-51-120] ....
That is, an insurance company selling automobile physical damage insurance might be classified, nevertheless, as a fire insurance company, as was Motors Insurance Corporation under the evidence noted above. But what is also significant is that, in determining the character of the insurance company, reference was made not only to its charter but also to the conduct and character of its business.
We have also been cited to State Farm Mutual Auto Insurance Company v. Board of Trustees of Firemen’s Pension & Relief Fund, 291 Ala. 250, 279 So.2d 512 (1973). In that case this Court considered whether State Farm was a “fire insurance” company under Act No. 307, Acts of Alabama, 1943. That Act, in general, provided that a “fire insurance” company doing business in certain cities would pay into a Firemen’s Pension and Relief Fund “[a] sum equal to one and one-half per centum of the gross premiums, less returned premiums,” on business conducted during the preceding year. This Court held that State Farm was not a “fire insurance company” for the purposes of Act No. 307 merely because it wrote automobile physical damage insurance:
[W]e are not convinced that the legislature, in Act 307, intended the words “fire insurance company” to be so broad. .

We conclude that the legislature intended in Act 307 that every insurance company insuring property against loss by fire would be considered to be a “fire insurance company” and that it would be liable to pay into the Firemen’s Pension and Relief Fund “a sum equal to one and one-half percentum of the gross premiums, less returned premiums, received by such fire insurance company for and on account of business, including all renewals of fire insurance.” The Motors case is also partly distinguishable, in that in Motors the company was chartered as a fire insurance company and so listed itself for state tax purposes and paid a lower rate of tax to the state because of such classification. Conversely, State Farm was not chartered as a fire insurance company and paid a higher state tax as a company other than a fire or marine or fire and marine insurance company.
291 Ala. at 255-256, 279 So.2d at 515-516. This Court then determined that taxable liability existed under Act 307, not because State Farm wrote automobile damage insurance, but because part of its business was insuring property against the risk of fire, and it was that part of its premium income which was held to be subject to the pension tax. The significance of Relief Fund lies in the fact that the statutory classifications established in §§ 11-51-120,-121 were not utilized to determine liability for the tax, but instead the inquiry under Act 307 was whether the company, of whatever nature, did any fire insurance business.
That is not the issue in the instant case, however. As the Sheffield, Motors and Relief Fund cases recognize, the legislature has established two categories of insurance which may be subject to the municipal privilege tax: fire and marine, and other than fire and marine. Motors, at 269 Ala. 343, 113 So.2d 147, recognized that implementation of those classifications was “not free of difficulty,” perhaps, as this record discloses, because of the historical development of insurance companies, the gradual expansion of coverages, and the fact that companies organized for one type of risk (e. g., fire) might actually write other coverage partially or exclusively. It is notable that in the Sheffield cases and in Motors as well, both the trial court and this Court looked to the evidence to determine the nature of the insurance company. Indeed, the emphasis of the statutes under consideration is not upon the amount of earned premium alloca-ble to fire insurance, but upon the character of the company itself.' The arguments of counsel for both sides take this position. *1115 Under these statutes the amount of premium so allocable is one, but only one, incident or element of that character. The record discloses that State Farm does not in fact write a separate policy covering only automobile physical damage risks. Instead the company issues one policy making available the following coverages: bodily injury and property damage liability, medical payments, comprehensive, collision, uninsured motor vehicle, automobile death indemnity and specific disability, total disability and loss of earnings, emergency road service, and automobile rental reimbursement. The comprehensive coverage pays for loss to the vehicle (except from collision) due to missiles, falling objects, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, collisions with birds or animals, and fire. (The company also writes health and accident policies.) This evidence justifies State Farm’s contention that it is a “casualty” company, the classification, incidentally, which it occupies with the State Department of Insurance for rate regulation as well as for State Taxation. -Examination of the evidence supports the finding of the trial court, therefore, that State Farm falls into the category of “other than fire and marine.” And because we have no legislative guidance on the proper classification to be accorded to any particular company, this functional test is the appropriate test to apply in individual cases. In other words, the nature of the principal business endeavor, as manifested by its charter, its activities and its operation's, will control the application of the classifications established by §§ 11-51-120,-121.
Birmingham also asserts a constitutional issue, viz., that it would be an unlawful discrimination to hold that a municipality could apply the 4% tax to a fire insurance company writing only automobile physical damage insurance and to apply the 1% tax to casualty companies writing those coverages and others. This argument is made to buttress Birmingham’s position that its construction of the statutes is constitutional, while State Farm’s position is not. It is appropriate to note that the trial court found that this issue had been untimely raised, /. e., without pleading and after trial. Although we are in accord with that finding, nevertheless we are prompted to observe that we perceive no discrimination in the application of these statutes. They create two classifications. The tax applicable to each is equal and uniform to the companies falling within either classification. Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25 (1937). Those classifications have not been shown to be arbitrary or capricious, Henry v. Shevinsky, 239 Ala. 293, 195 So. 222 (1940), but rest upon substantial differences in the natures of the companies to which they apply. State v. Pure Oil Company, 256 Ala. 534, 55 So.2d 843, 846 (1952); see generally 53 C.J.S. Licenses § 22b(l) and (2).
Having decided the controlling issue, it is unnecessary to reach the other points raised by the defendant. The trial court’s judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.