LYONS, Justice.
Textron, Inc., Textron Financial Corporation, and James M. Regan petition this Court for a writ of mandamus directing the St. Clair Circuit Court to dismiss, based on forum-selection clauses, claims asserted against them by Alabama Boating Centers, Inc.; Ryan Creek Acquisitions, Inc.; Logan Martin Boating Center, Inc.; Ryan Creek Boating Center, Inc.; Billy M. Cosper, Jr.; Andrew J. Kaufmann, Jr.; ABM Acquisition and Development, LLC; and Donald F. Seibert. We deny the petition in part, grant it in part, and issue the writ.

Factual Background, and Procedural History

Ryan Creek Acquisitions, Inc. (“Ryan Creek Acquisitions”), was an Alabama corporation that sold recreational boats to consumers. In 2007, Ryan Creek Acquisitions changed its name to Alabama Boating Centers, Inc. (“Alabama Boating”); it has continued to sell recreational boats under that name. Logan Martin Boating Center, Inc. (“Logan Martin”), is also an Alabama corporation that sells recreational boats to consumers. It appears from the documents presented to us that Alabama Boating and Logan Martin are independent entities that share some of the same owners and officers.
Textron Financial Corporation (“Tex-tron Financial”) is a Delaware corporation with headquarters in Rhode Island and offices in several states. Textron Financial is a subsidiary of Textron, Inc. (“the Textron parent”), also a Delaware corporation with headquarters in Rhode Island.
On December 5, 2006, Ryan Creek Acquisitions entered into a credit and security agreement with Textron Financial (“the 2006 agreement”). The 2006 agreement provided that Textron Financial would finance Ryan Creek Acquisitions’ purchase of inventory and that Textron Financial would receive a security interest in that inventory and in other of Ryan Creek Acquisitions’ assets to secure the resulting debt. Paragraph 11 of the 2006 agreement granted Textron Financial the right, upon default by Ryan Creek Acquisitions, to repossess the collateral made the subject of the security interest. That paragraph stated, in part:
“If an event of default occurs, Secured Party shall have all of the rights and *63 remedies of a secured party under the Uniform Commercial Code and any other applicable laws. Debtor agrees that Secured Party may, by itself or through an agent, without notice to any person and without judicial process of any kind, enter in any premises or upon any land owned, leased, or otherwise under the apparent control of Debtor, where secured party believes the collateral may be, and disassemble, render unusable and/or repossess all or any items of the collateral. Debtor expressly waives all rights to possession of the collateral after default and all claims for injuries suffered through or loss caused by such injury or repossession by Secured Party. Debtor shall, upon demand by Secured Party, assemble the collateral and return it to Secured Party at a place designated by Secured Party.”
Paragraph 16 of the 2006 agreement contained the following forum-selection clause:
“This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Rhode Island without reference to conflict of laws principles. Debtor consents to the exclusive jurisdiction of the Courts of the State of Rhode Island, sitting in Providence, Rhode Island and the United States District Court for the District of Rhode Island for all purposes in connection with this Agreement. Debtor hereby waives and agrees not to assert any objection to the jurisdiction of any such Courts, including the objection of inconvenient forum.”
Billy M. Cosper, Jr., Andrew J. Kauf-mann, Jr., and Donald F. Seibert personally guaranteed Ryan Creek Acquisitions’ obligations under the 2006 agreement. Each of their guaranty agreements included the following choice-of-law and forum-selection clauses: “This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Rhode Island, without reference to applicable conflict of law principles. Guarantor consents to the jurisdiction and venue of Rhode Island courts in connection with Textron [Financial] ⅛ enforcement of any of Guarantor’s obligations under this guaranty.”
On March 5, 2007, Logan Martin entered into a credit and security agreement with Textron Financial (“the 2007 agreement”). The 2007 agreement provided that Textron Financial would finance Logan Martin’s inventory and would receive a security interest in the inventory and in other of Logan Martin’s assets to secure the resulting debt. The 2007 agreement contained repossession and forum-selection provisions identical to those in paragraphs 11 and 16 of the 2006 agreement. Cosper, Kaufmann, Seibert, and ABM Acquisition and Development, LLC (“ABM”), guaranteed Logan Martin’s obligations under the 2007 agreement. Each of their guaranty agreements included choice-of-law and forum-selection provisions identical to those in the guaranty agreements executed with the 2006 agreement.
On May 8, 2008, Logan Martin and Ryan Creek Acquisitions, under its new name, Alabama Boating, jointly entered into another credit and security agreement with Textron Financial (“the 2008 agreement”). Under the 2008 agreement, Tex-tron Financial would finance the acquisition of inventory for both companies and would receive security interests in their inventory and other assets to secure the resulting debt. The 2008 agreement contained repossession and forum-selection provisions identical to those in paragraphs 11 and 16 of the 2006 agreement. Cosper and Kaufmann guaranteed Alabama Boating’s and Logan Martin’s obligations under the 2008 agreement. Their guaranty agreements contained choice-of-law and forum-selection clauses identical to those *64 contained in their earlier guaranty agreements.
Under the 2006 agreement and the 2008 agreement, Textron Financial ultimately provided approximately $4,200,000 in inventory financing first to Ryan Creek Acquisitions and subsequently to Alabama Boating. Under the 2007 agreement and the 2008 agreement, Textron Financial ultimately provided approximately $2,500,000 in inventory financing to Logan Martin. On October 24, 2008, Textron Financial wrote Alabama Boating and Logan Martin and advised them that, although Textron Financial “remain[ed] firmly committed to the marine industry,” due to “turbulence” in worldwide credit markets, Textron Financial would be changing pricing structures and increasing the interest rates Alabama Boating and Logan Martin paid under the 2006 agreement, the 2007 agreement, and the 2008 agreement (collectively, “the financing agreements”). Kaufmann signed agreements on behalf of both companies, acknowledging Textron Financial’s proposed changes. On December 31, 2008, Textron Financial wrote Alabama Boating and Logan Martin again, this time advising them that, as a result of continued “negative economic conditions,” Textron Financial would “no longer provide wholesale financing to the marine industry”; that the financing agreements would be canceled as of February 27, 2009; and that the outstanding debt under the financing agreements must be paid. Alabama Boating, Logan Martin, and the various guarantors maintain that Textron Financial knew in October 2008 that it intended to stop financing marine products but that it concealed that information from them.
Susan Anderson, Textron Financial’s vice president, whom Textron Financial describes as a “workout account manager,” stated in an affidavit that, as of April 2010, Aabama Boating and Logan Martin jointly owed Textron Financial $1,553,944 in outstanding principal and interest under the financing agreements. She also stated that Textron Financial had unsuccessfully sought payment from Aabama Boating and Logan Martin for several months in 2009. Subsequently, on December 23, 2009, Textron Financial wrote Aabama Boating and Logan Martin advising them that they were in default of the financing agreements and that their debts had been accelerated and demanding immediate surrender of the collateral securing the debts. Textron Financial copied the December 23, 2009, letter to Cosper, Kaufmann, Seibert, and ABM as guarantors of the debts and demanded payment from them. On March 26, 2010, Textron Financial again wrote Aabama Boating and Logan Martin advising them that they were in default under the financing agreements; demanding payment from Aabama Boating and Logan Martin and the guarantors; and demanding surrender of the collateral.
On April 7, 2010, Textron Financial commenced an action against Aabama Boating and Logan Martin in the United States District Court for the Northern District of Aabama (“the Northern District”), stating claims sounding in detinue pursuant to Rule 64, Fed.R.Civ.P.; Rule 64, Ala. R. Civ. P.; and § 6-6-250 et seq., Aa.Code 1975 (“the detinue action”). Textron Financial sought 1) a determination that it had a right to possession of the collateral identified as security in the financing agreements, specifically, the inventory it had financed under those agreements; 2) a writ of seizure; and 3) a final judgment granting it possession of the collateral. No right to a money judgment was asserted. On April 29, 2010, Aabama Boating and Logan Martin answered the detinue complaint and asserted various affirmative defenses, including fraud.
*65 On April 29, 2010, the same day Alabama Boating and Logan Martin filed their answer in the detinue action, Alabama Boating; its predecessor, Ryan Creek Acquisitions; Logan Martin; Cos-per; Kaufmann; and another entity, Ryan Creek Boating Center, Inc., commenced an action against the Textron parent; Tex-tron Financial; and James M. Regan, an employee of Textron Financial, in the St. Clair Circuit Court (“the St. Clair action”).[1] The complaint in the St. Clair action stated several claims against the defendants, including fraud, suppression, negligence, breach of contract, breach of fiduciary duty, civil conspiracy, and promissory fraud.
On May 26, 2010, the parties to the detinue action filed a joint stipulation of the dismissal of that action. In doing so, the parties stipulated that Textron Financial’s detinue claims would be dismissed without prejudice and that the dismissal would have “no effect on” the St. Clair action. On June 1, 2010, Textron Financial sued Alabama Boating, Logan Martin, Cosper, Kaufmann, Seibert, and ABM in the United States District Court for the District of Rhode Island (“the Rhode Island action”). In the Rhode Island action, Textron Financial stated claims of breach of contract against Alabama Boating and Logan Martin and claims against each of the guarantors seeking recovery under the various guaranty agreements.
On June 3, 2010, the Textron parent; Textron Financial; and Regan (collectively “the Textron defendants”) moved to dismiss the St. Clair action based on the forum-selection clauses in the financing agreements. The Textron defendants also alleged that the complaint in the St. Clair action failed to state a claim upon which relief could be granted. The plaintiffs in the St. Clair action responded and subsequently amended their complaint to add ABM and Seibert as plaintiffs and to state additional claims of fraud and suppression against the Textron defendants. On August 13, 2010, after extensive briefing by the parties, the trial court denied the Tex-tron defendants’ motion to dismiss the St. Clam action, finding that Textron Financial had waived its rights under the forum-selection clauses by filing the detinue action in the Northern District and that the plaintiffs had stated claims upon which relief could be granted. On October 8, 2010, the Textron defendants petitioned this Court for a writ of mandamus directing the trial court to dismiss the plaintiffs’ claims against them without prejudice so that they may be asserted in the Rhode Island action.

Standard of Review

This Court has stated:
“ ‘[A] petition for a writ of mandamus is the proper vehicle for obtaining review of an order denying enforcement of an “outbound” forum-selection clause when it is presented in a motion to dismiss.’ Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala.2001); see Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala.2000). ‘[A] writ of mandamus is an extraordinary remedy, which requires the petitioner to demonstrate a clear, legal right to the relief sought, or an abuse of discretion.’ Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala.2001). ‘[T]he review of a trial court’s ruling on the question of enforcing a forum-selection clause is for an *66 abuse of discretion.’ Ex parte D.M. White Constr. Co., 806 So.2d at 372.”
Ex parte Leasecomm Corp., 886 So.2d 58, 62 (Ala.2003). This Court has also explained that, in considering a petition for a writ of mandamus when the facts are undisputed and this Court is presented with pure questions of law, it reviews the trial court’s ruling de novo. See, e.g., Regions Bank v. Reed, 60 So.3d 868, 877 (Ala.2010)(“The circuit court’s order issuing a writ of mandamus involves only questions of law. Therefore, the same standard of review applies to both the appeal and the petition: a de novo standard.”); George v. Sims, 888 So.2d 1224, 1226 (Ala.2004) (“Because the facts are undisputed and we are presented with pure questions of law, our standard of review is de novo.”).

Analysis

I. Textron Financial
“In [Professional Ins. Corp. v.] Sutherland, [700 So.2d 347 (Ala.1997) ], this Court adopted the majority rule, by which an ‘outbound’ forum-selection clause is upheld unless the party challenging the clause clearly establishes that it would be unfair or unreasonable under the circumstances to hold the parties to their bargain. 700 So.2d at 351.” Ex parte CTB, Inc., 782 So.2d 188, 190-91 (Ala.2000). The trial court did not hold that the forum-selection clauses in the financing agreements were unfair or unreasonable. Instead, it held that Textron Financial had waived its rights under the forum-selection clauses by filing the detinue action in the Northern District and denied the Textron defendants’ motion to dismiss based on that holding.
Our research has not disclosed, and the parties have not cited, an Alabama case dealing with waiver in the context of a forum-selection clause. Regarding the waiver of rights under a contract generally, this Court has stated:
“The question of waiver, the voluntary surrender of a known right, is in the main a question of intention, and the authorities hold that, to be effectual, it must be manifested in some unequivocal manner; if not express, then by such language or conduct as to evince clearly the intention to surrender. Bennecke v. Insurance Co., 105 U.S. 355, 26 L.Ed. 990 [ (1881) ]; Balfour v. Parkinson (C.C.) 84 Fed. 855, 861 [ (1898) ]. Quoting Sanborn, J., in Rice v. Fidelity & Deposit Co., 103 Fed. 427, 435, 43 C.C.A. 270, 278 [ (1900) ]:
“ ‘To constitute a waiver, there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe, and which deceive him into the belief, that the holder of the right has abandoned it.’
“‘A waiver will not be implied from slight circumstances, but must be evidenced by an unequivocal and decisive act, clearly proved.’ 29 Am. & Eng. Law, p. 1105.”
Isom v. Johnson, 205 Ala. 157, 159-60, 87 So. 543, 545 (1920).
In their mandamus petition, the Textron defendants argue that, by filing the deti-nue action in the Northern District, Tex-tron Financial did not waive its rights under the forum-selection clauses of the financing agreements because those agreements expressly granted Textron Financial the right to repossess the collateral made subject to the financing agreements, a right Textron Financial could assert only in Alabama. The financing agreements granted Textron Financial the right to repossess the inventory it had financed and in which it held a security interest. It is undisputed that the inventory of Alabama Boating and Logan Martin, the collateral *67 Textron Financial sought to repossess in the detinue action, is located in Alabama. In their mandamus petition, the Textron defendants state that “Textron Financial could not have filed its repossession action anywhere other than Alabama.” (Petition, at 24.) We agree.
Rule 64, Fed.R.Civ.P., requires the federal courts considering actions for the seizure of property to apply “the law of the state where the court is located.” Both Rhode Island and Alabama laws provide remedies for the recovery of property that can be found within the respective states. See, e.g., R.I. Gen. Laws § 34-21-2 (1956)(“The district court may issue writs of replevin where the goods and chattels to be replevied are valued at five thousand dollars ($5,000) or less, and venue of the action may be in any division of the district court where they were taken, attached or detained.”). Implicit in this language is the premise that the Rhode Island Legislature enacted the statute to govern recovery of property found within the jurisdiction of a district court in that state. Section 6-6-250, Ala.Code 1975, provides: “When an action is commenced for the recovery of personal chattels in specie ... it is the duty of the clerk to endorse on the summons that the sheriff is required to take the property mentioned in the complaint into his possession unless the defendant gives bond payable to the plaintiff_” See also § 6-6-255 (“If the officer fails to find and take the goods and chattels, he may summon the defendant to appear as in other cases, and the plaintiff may then declare and prosecute the action alone for the recovery of the value of the property and damages for the taking and detention of the property as if he had thus commenced his action by a complaint.”). Implicit in this language is the premise that the Alabama Legislature enacted the statute to govern recovery of property that could be found within this State. Because the property Textron Financial sought to repossess was in Alabama, any action for repossession of that property lay in Alabama where the property could be found; thus, Textron Financial could have filed its repossession action only in Alabama.
The forum-selection clauses in the financing agreements state, in part: “Debt- or consents to the exclusive jurisdiction of the Courts of the State of Rhode Island, sitting in Providence, Rhode Island and the United States District Court for the District of Rhode Island for all purposes in connection with this Agreement.” The plaintiffs contend that the word “exclusive” in this provision prohibited Textron Financial from filing any action — including an action seeking repossession — in any court except the federal and state courts in Rhode Island. The plaintiffs also argue that the trial court in the St. Clair action correctly concluded that the detinue action was brought for a “purpose[ ] in connection with th[e] [financing] Agreements,” and, therefore, that the detinue action was governed by the forum-selection clauses, and that by filing the detinue action in the Northern District, Textron Financial waived its rights under those clauses;
However, the parties could not, by contract, have empowered the federal or state courts in Rhode Island to act beyond their authority. Because those out-of-state courts lacked authority to order repossession of property in Alabama, reading the forum-selection clauses as the plaintiffs suggest would render Textron Financial’s repossession of the collateral impossible. Under such a construction, those portions of the financing agreements authorizing Textron Financial to repossess the property securing its loan would be nugatory. The plaintiffs contend that Textron Financial could and should have drafted an express exception to the forum-selection *68 clauses allowing repossession actions to proceed in an appropriate jurisdiction. However, the financing agreements expressly grant Textron Financial the right to repossess its collateral, and this Court will avoid construing the financing agreements so as to deprive the repossession provisions of a field of operation. This Court has stated:
“Terms of a written instrument should be construed in pari materia and a construction adopted that gives effect to all terms used. Federal Land Bank of New Orleans v. Terra Resources, Inc., 373 So.2d 314 (Ala.1979). Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation; however, if that is not possible, any doubt will be resolved in favor of the first part, considering the instrument as a whole. Scherf v. Renfroe, 266 Ala. 35, 93 So.2d 402 (1957).”
Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995).
A Florida District Court of Appeal considered similar circumstances in Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc., 656 So.2d 541 (Fla.Dist.Ct.App.1995). In that case, Advantage Car Rental & Sales, Inc. (“Advantage”), had leased automobiles to Prestige Rent-A-Car, Inc. (“Prestige”). The lease agreement included a forum-selection clause stating that actions brought based on an alleged breach of the agreement, to enforce the agreement, or to declare the parties’ rights thereunder were to be brought in the state of New York. Advantage subsequently sued Prestige in a federal court in New York, stating claims of breach of contract and seeking recovery of the leased vehicles. However, the “New York court concluded that it had no authority to order replevin of the automobiles since they were located outside the state of New York.” 656 So.2d at 543. Advantage subsequently filed a complaint in Florida seeking repossession of the vehicles and obtained a writ of replevin from the Florida court. Prestige appealed.
“On appeal, Prestige arguefd] that the trial court erred in finding that paragraph 20 of the lease agreement, which allow[ed] Advantage to retake possession of the vehicles, operated to waive ... paragraph 23, which provide[d] for exclusive jurisdiction in New York for the parties’ duties.... ” 656 So.2d at 544. The Florida District Court of Appeal analyzed the seemingly conflicting provisions, stating:
“Prestige is correct that forum-selection clauses are generally enforceable .... Here the parties selected New York as their forum for settling disputes under the lease, unless otherwise expressly waived by them. In paragraph 20, the parties expressly agreed that one of Advantage’s remedies in the event of default is to retake possession of the vehicles and Prestige expressly authorized Advantage to enter its premises where the vehicles were located in order to take possession. The parties were aware that the vehicles were to be located in Florida and not New York. A New York court cannot order repossession of property located outside its jurisdiction.... Thus, the only logical construction of the contract is the parties intended that Advantage had the right — through appropriate court proceedings in Florida — to retake possession of the vehicles in Florida. To require the parties to seek repossession in New York which has no authority to order seizure of the property would effectively eliminate the remedy of repossession bargained for in the contract.
“Furthermore, paragraph 23 could not confer jurisdiction on a New York court for replevin of property located outside *69 the state.... Replevin is a possessory-action and therefore requires in rem jurisdiction over the subject matter.... An action for replevin cannot be successfully maintained unless the property is within the state and subject to the jurisdiction of its courts.... Thus the parties could not have conferred in rem jurisdiction on the New York court to handle the replevin action of vehicles located in Florida.”
656 So.2d at 544 (footnote omitted; second emphasis added). We find this reasoning persuasive. See also RMP Rentals v. Metroplex, Inc., 356 Ark. 76, 80-81, 146 S.W.3d 861, 864 (2004) (declining to apply a forum-selection clause mandating Louisiana as forum for a claim under the Arkansas materialmen’s lien statute, stating: “Parties may by agreement consent to personal jurisdiction in a given court, but subject-matter jurisdiction cannot be conferred merely by agreement of the parties .... While a forum-selection clause implies consent as to personal jurisdiction, ... it cannot confer subject-matter jurisdiction over in rem proceedings.... Only an Arkansas court has subject-matter jurisdiction to enforce the liens and to order foreclosure on real property located within its borders.”); Middletown Park Realty, LLC v. Bar BQ Junction, Inc., [Ms. CA 2009-10-258, May 17, 2010] (Ohio Ct. of App.2010)(not published in Ohio Appellate Reports or Northeastern Reporter 2d) (“We find that MPR did not waive its choice of forum because the company was obligated to bring the forcible entry and detainer action in Ohio. This was not a ‘voluntary relinquishment’ of MPR’s contractual right; it was a requirement, by the state of Ohio, in order for MPR to repossess its property. MPR should not now be forced to remain in Ohio to litigate issues arising from the lease when the forum-selection clause, to which BBQ Junction agreed, clearly states that such matters are to be brought in Marion County, Indiana.”).
Therefore, recognizing that the state and federal courts in Rhode Island cannot act beyond their authority, and giving effect both to the forum-selections clauses and to those terms in the financing agreements granting Textron Financial a right of repossession, we conclude that the logical construction of the financing agreements is that the parties to the financing agreements intended Textron Financial to have the right — through appropriate court proceedings in Alabama — to retake possession of its collateral in Alabama. In order to harmonize the provisions in the financing agreements, we read the term “exclusive jurisdiction” in the forum-selection clauses, in light of the separate provisions of the financing agreements conferring a right to a remedy for seizure, as operating to the exclusion of any other court having concurrent jurisdiction. The Rhode Island courts have no concurrent jurisdiction to seize property located in Alabama. Recognizing the availability of an action to seize property in Alabama respects the separate contractual provisions granting Textron Financial a right to recover its collateral while also affording a field of operation to the forum-selection clauses.
The plaintiffs contend that, even if Tex-tron Financial did not waive the forum-selection provisions, the detinue action “encompassed the entirety of the parties’ dispute” and, therefore, that Textron Financial violated the forum-selection clauses and selected Alabama as the forum for resolving “the full dispute arising out of the credit and security agreements].” (Answer, at 17, 21.) To support this contention, the plaintiffs reference 1) Textron Financial’s allegations in the detinue action that Alabama Boating and Logan Martin were in default under the financing agreements and 2) Alabama Boating and Logan *70 Martin’s answer asserting defenses based in fraud. In the detinue action, however, Textron Financial sought only possession of the collateral. Although Textron Financial was required to prove its right to possession, it did not assert any claims of breach of contract, nor did it seek recovery from the guarantors. Moreover, although Alabama Boating and Logan Martin asserted defenses to the detinue action, they did not file any counterclaims against Tex-tron Financial. Instead, on the same day they filed their answer in the detinue action, they filed a separate action in the St. Clair Circuit Court — an action related to the parties’ transactions under the financing agreements but brought by additional parties and asserted against additional defendants. The detinue action, therefore, was limited to the question of possession and did not “encompass the entirety of the parties’ dispute” as the plaintiffs contend.
Because Textron Financial, in filing the detinue action to obtain repossession of the collateral, was exercising a right granted to it under the financing agreements, a right that could have been exercised only in Alabama, Textron Financial’s filing of the detinue action was not conduct clearly showing an intent to surrender its rights under the forum-selection clauses. See Isom, 205 Ala. 157, 87 So. at 545. Accordingly, the trial court erred in concluding that Textron Financial waived its rights under the forum-selection clauses of the financing agreements.
In the final paragraph of their answer to the mandamus petition, the plaintiffs contend that they have sought rescission of the financing agreements and, therefore, that their claims do not fall within the forum-selection clauses. Because Ryan Creek Acquisitions, Alabama Boating, and Logan Martin are the only parties to the agreements sought to be rescinded, we restrict our examination of this contention to those parties. In support of their argument they cite Vankineni v. Santa Rosa Beach Development Corp. II, 57 So.3d 760 (Ala.2010), in which the forum-selection clause expressly stated that it applied to “ ‘any action to enforce a provision’ of the contract.” 57 So.3d at 762. Based on that language, this Court held that an action for rescission did not fall within the scope of the forum-selection clause. The forum-selection clauses in the financing agreements, however, are much broader and expressly relate to “all purposes in connection with” the financing agreements. Accordingly, Vankineni is distinguishable, and the plaintiffs’ claims seeking rescission do fall within the scope of the forum-selection clauses.
Based on the foregoing, Textron Financial, as a party to the financing agreements, has shown that the claims asserted against it by Ryan Creek Acquisitions, its successor, Alabama Boating, and Logan Martin are subject to the forum-selection clauses of the financing agreements. Accordingly, Textron Financial has shown a clear legal right to the dismissal of the claims asserted against it by those plaintiffs.
Because the forum-selection clauses concern the parties to the financing agreements — Textron Financial, Ryan Creek Acquisitions, Alabama Boating, and Logan Martin — and do not expressly encompass other individuals or entities, we must separately consider whether the forum-selection clauses require dismissal of the claims asserted by and against nonparties to the financing agreements.
II. The Other Textron Defendants
The Textron parent and Regan, Textron Financial’s employee, claim the benefit of the forum-selection clauses and argue that their motion to dismiss the plaintiffs’ claims against them should have *71 been dismissed pursuant to those clauses. As stated above, the language of the forum-selection clauses does not expressly encompass nonparties to the financing agreements. However, the clauses do state that the “debtors” — defined by the various financing agreements as Ryan Creek Acquisitions, Alabama Boating, and Logan Martin — consent “to the exclusive jurisdiction of the Courts of the State of Rhode Island, sitting in Providence, Rhode Island and the United States District Court for the District of Rhode Island for all purposes in connection with this Agreement.” (Emphasis added.)
“When interpreting a contract, this Court must first look to the plain language of the contract and determine whether that language is ambiguous. ‘[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.’ Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998) (citing Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409 (Ala.1993)).”
Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala.2004). In their complaint, Ryan Creek Acquisitions, Alabama Boating, and Logan Martin allege that the Textron parent and Regan engaged in various acts of fraud and negligence related to Textron Financial’s financing of inventory for Ryan Creek Acquisitions, Alabama Boating, and Logan Martin. The claims asserted against the Textron parent and Regan by Ryan Creek Acquisitions, Alabama Boating, and Logan Martin, therefore, are asserted by “debtors ... in connection with” the financing agreements. Because the language of the forum-selection clauses is broad enough to include the claims asserted against the Textron parent and Regan by “the debtors,” the Textron parent and Regan have shown a clear legal right to the dismissal of the claims asserted against them by those plaintiffs.
III. Other Parties
The guaranty agreements entered into by Cosper, Kaufmann, Seibert, and ABM (collectively, “the guarantors”) include independent, and much narrower, forum-selection clauses than those in the financing agreements. Specifically, each of the guaranty agreements state: “Guarantor consents to the jurisdiction and venue of Rhode Island courts in connection with Textron [Financiall’s enforcement of any of Guarantor’s obligations under this guaranty.” (Emphasis added.) This provision merely consents to venue; it does not provide for exclusive jurisdiction as is the case with the forum-selection clauses found in the financing agreements. In their mandamus petition, the Textron defendants have not stated any basis upon which we could conclude that the forum-selection clauses of the financing agreements bind the guarantors. We note that Textron Financial has filed a separate action against the guarantors in Rhode Island seeking recovery under the guaranty agreements. Whether each of those actions may proceed independently of the other is a question not before us in this proceeding. Accordingly, at this stage of the proceedings, the Textron defendants have not shown a clear legal right to the dismissal of the claims asserted against them by the guarantors.
Finally, as to Ryan Creek Boating Center, Inc. (not to be confused with Ryan Creek Acquisitions, Inc., the former name of Alabama Boating Centers, Inc.), we noted above that none of the materials presented to this Court identifies Ryan Creek Boating Center, Inc., or explains its relationship to the various entities and individ *72 uals involved in this litigation. Notably, none of the documents presented to this Court shows that Ryan Creek Boating Center, Inc., was a party to any of the financing agreements. In their mandamus petition, the Textron defendants have not stated any basis upon which we could conclude that the forum-selection clauses of the financing agreements extend to Ryan Creek Boating Center, Inc. Accordingly, at this stage of the proceedings, the Textron defendants have not shown a clear legal right to the dismissal of the claims asserted against them by Ryan Creek Boating Center, Inc.

Conclusion

Based on the foregoing, we conclude that the Textron defendants have shown a clear legal right to the dismissal of the claims asserted against them in the St. Clair action by Ryan Creek Acquisitions, Alabama Boating, and Logan Martin, and that the trial court erred in denying their motion to dismiss as to the claims asserted against the Textron defendants by those plaintiffs. However, the Textron defendants have not shown a clear legal right to the dismissal of the claims asserted against them by the guarantors or by Ryan Creek Boating Center, Inc. Accordingly, we deny the petition in part, grant it in part, and direct the trial court to vacate its August 13, 2010, order insofar as it relates to Ryan Creek Acquisitions, Alabama Boating, and Logan Martin and to enter an order dismissing without prejudice the claims of those plaintiffs against the Textron defendants.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
COBB, C.J., and STUART and BOLIN, JJ., concur.
MURDOCK, J., concurs specially.

. Except for statements in the complaint in the St. Clair action stating that Ryan Creek Boating Center, Inc., is an Alabama corporation doing business in St. Clair County, none of the records presented to this Court identify Ryan Creek Boating Center, Inc., or explain its relationship to the various entities and individuals involved in the St. Clair action.